358 A.2d 370.

STATE *vs.* DONALD W. JOHNSON.

JUNE 2, 1976.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. On December 6, 1971, the grand jury for the counties of Providence and Bristol returned an indictment that charged the defendant with committing the common law crime of burglary.

The state's principal witness at a Superior Court jury trial was a woman who was employed as a high school English teacher. In the fall of 1971 the teacher and her two children lived in a first-floor two-bedroom apartment that was located in the East Side section of Providence. An asphalt driveway ran alongside the apartment house. Anyone of medium height could stand on the driveway and look into the living room and dining room portions

of the apartment. The two bedrooms were each occupied by one of the children. The mother used the dining room as her sleeping quarters.

The teacher testified that at approximately 1:30 a.m. on October 27 she had fallen asleep while lying on the dining room couch reading. She was fully clothed and the lights were on in the dining room and living room areas. A noise in the living room awakened her. She went into the living room and saw that the driveway window was open and perched on the sill was a man whose hands were wrapped in old cloths. The man's head and shoulders were inside the apartment. The teacher screamed, "Get out of my house," and charged at the intruder. He disappeared. The teacher went over to the window, looked out on to the driveway, and, as she turned to her right, she found herself practically eyeball to eyeball with the intruder, who was leaning flush against the side of the house. She shut the window, locked it, and summoned the police.

One-half hour later and one-half mile away defendant, while going through a backyard, was arrested by a police officer who had secreted himself at this particular location. There was a bit of a scuffle before the arrest was effectuated. The teacher was summoned to the police headquarters to view a lineup. She picked out defendant as the percher she had seen on her living room windowsill. The total elapsed time between her screams and her identification at the lineup was about $2\frac{1}{2}$ hours.

The narrative just unfolded is the sum and substance of the state's case. When the state rested, the defense moved for a judgment of acquittal, presumably on the basis that the mere fact that Johnson illegally entered the teacher's illuminated apartment was not in and of itself sufficient to establish that his unauthorized entry was for the purpose of committing a felony.

The trial justice, in granting defendant's motion for a judgment of acquittal on the burglary charge, remarked that while there was evidence from which the jury could find that defendant intended to commit larceny once he landed inside the teacher's residence, there was no evidence as to the value of the property that he might have taken. The trial justice pointed out that under Rhode Island law, larceny of property can be either a felony or a misdemeanor. If the value of the "take" exceeds $500, it is a felony; otherwise, it is a misdemeanor.[1] The direction apparently was based upon the lack of any evidence that would warrant an inference that defendant would have carried away more than $500 worth of goods if his presence had not been discovered.

Once having disposed of the burglary charge, the trial justice then informed counsel that the case would go to the jury for its consideration of two lesser but included charges, which he described as "* * * the statutory breaking and entering and the breaking and entering without the consent of the owner * * *." Thereafter defendant offered the defense of an alibi. At the conclusion of his

---

[1] General Laws 1956 (1969 Reenactment) §11-1-2 stipulates that, unless otherwise provided, any criminal offense where the possible punishment can be imprisonment for more than 1 year or a fine in excess of $500 shall be considered as a felony. With this as our guide, we then turn to ch. 41 of title 11, where we see that anyone who is convicted of having committed such crimes as stealing, receiving stolen goods, embezzlement, and obtaining property under false pretenses shall be considered as having committed larceny. Section 11-41-5 states that if the value of the property or money involved in any of the aforesaid crimes exceeds $500, the accused may be punished by a prison term of up to 5 years or a fine of not more than $1,000 or both. However, if the value of the property or goods is less than $500, the maximum potential punishment is a period of incarceration of 1 year or the imposition of a $500 fine or both. Consequently, stealing from a place or a location can either be a felony or a misdemeanor, with the criterion being the value of the property taken. We should also point out that §11-41-7 provides that larceny from the person is a felony.

case, defendant once again moved for a judgment of acquittal insofar as the "statutory breaking and entering" charge was concerned. This motion was denied.

In his charge the trial justice informed the jury that even though the burglary charge was not before it, there was evidence which would support a conviction for either one of two lesser crimes which go to make up the crime of burglary. The first crime he discussed was the so-called "statutory breaking and entering" proviso to which he had alluded when he granted the initial acquittal motion. It is found in §11-8-3. The statute makes it a crime for an individual to enter a dwelling at any time of the day or night with intent to commit murder, rape, robbery, arson, or larceny. A reading of the statute shows that there is no need to show a break, as all that is required is proof of an entry. The trial justice told the jury that in order to have a conviction under this statute, the state was required to satisfy the jury beyond a reasonable doubt that defendant entered the teacher's dwelling "with the intent to commit larceny." He informed the jury that if they believed the teacher, then there was an entry, and he defined larceny as "stealing, it means to steal."

The jury was then told that if it was not satisfied as to defendant's guilt on that particular charge, it should consider the second charge of breaking and entering into the dwelling house or apartment of another without the consent of the tenant. This particular crime is delineated in §11-8-2.

When the jury returned its verdict, the foreman announced that it had found defendant guilty of "[b]reaking and entering for the purpose of committing a felony." After defense counsel suggested that the guilty verdict as returned by the foreman encompassed the burglary charge, an extended colloquy between counsel and the court ensued. The jury was polled and, although the poll evoked

454

a series of different replies, it was clear that the jury's guilty verdict involved only the charge concerning an entry of the premises with the intent to commit larceny and that at no time did the jury consider the second charge, breaking and entering without the consent of the tenant.

In his appeal defendant contends that the trial justice erred in several areas, including the denial of his second acquittal motion. We cannot agree.

In considering a motion for judgment of acquittal, the trial justice is restricted to an evaluation of that evidence which the state claims affords a requisite basis for submitting the case to the jury. The trial court and this court on review are bound to review this particular evidence in the light most favorable to the state, drawing therefrom all reasonable inferences consistent with the accused's guilt. Neither the credibility of the witnesses nor the weight of the evidence is before the court at that time. The evidence upon which the state relies is measured by these principles to determine if the evidence is capable of generating a finding of guilt beyond a reasonable doubt. *State v. Jefferson,* 116 R. I. 124, 353 A.2d 190 (1976); *State v. Wilbur,* 115 R. I. 7, 339 A.2d 730 (1975); *State v. Moretti,* 113 R. I. 213, 319 A.2d 342 (1974).

There is a substantial body of law which holds that an unexplained, unlawful breaking and entering into a dwelling or building containing personal property during the nighttime raises an inference that the illegal entry was made with the intent to commit larceny. *Garcia v. People,* 172 Colo. 329, 473 P.2d 169 (1970); *Ex parte Seyfried,* 74 Idaho 467, 264 P.2d 685 (1953); *People v. Johnson,* 28 Ill.2d 441, 192 N.E.2d 864 (1963); *State v. Gatewood,* 169 Kan. 679, 221 P.2d 392 (1950); *Commonwealth v. Ronchetti,* 333 Mass. 78, 128 N.E.2d 334 (1955); *State v. Wills,* 107 N. H. 107, 218 A.2d 47 (1966); *Lyons v. State,* 516 P.2d 283 (Okla. Crim. 1973); *Strait v. State,* 41 Wis.

2d 552, 164 N.W.2d 505 (1969); 2 Wharton, *Criminal Law and Procedure* §408 at 26-29 (Anderson ed. 1957). This inference is based upon the common experiences of man, which recognize that people usually do not engage in this type of behavior with an innocent intent and that ordinarily the intent in such instances is to steal. We believe, therefore, that defendant's aborted illicit nighttime breaking and entering into the teacher's apartment warrants the inference that he was there to steal something.

The defendant argues that if, when the burglary charge was still viable, his nighttime entry was not capable of raising an inference that he was making his way into the apartment to take personal property having a value in excess of $500, his half-in and half-out posture on the windowsill cannot support an inference that he was going to limit his swag to articles whose value was below $500. The ready and quick response to this contention lies in the language of §11-8-3. When the Legislature used the word "larceny" in the statute, it was meant to be synonymous with the word "steal." In other words, all that is required under the entry with intent to commit larceny portion of §11-8-3 is an intent to steal; the value of what is taken is immaterial. *State* v. *Shapiro,* 29 R. I. 133, 69 A. 340 (1908); *see also State* v. *Smith,* 56 R. I. 168, 184 A. 494 (1936). The denial of defendant's motion for acquittal on the charge that he violated §11-8-3 was correct.

The other phases of defendant's appeal relate to rulings made by the trial justice prior to the reception of evidence. The Attorney General had sent defendant's attorney a so-called 7-day notice. This notice is a printed form, and it notified defendant that his trial on four indictments was scheduled for March 29, 1973. When the cases were actually reached for trial on May 16, 1973, the prosecutor announced that he was proceeding only on the indictment that involved defendant's entry into the teacher's apart-

ment. The defendant objected, and the trial justice ruled in favor of the prosecution.

From this facet of defendant's argument, we find that there was another larceny on the same street where the teacher lived on the same night she observed defendant in her living room. The other burglary allegedly included two assaults. The alleged burglary and assaults occurred prior to the living room confrontation between the teacher and defendant, and they are the subject of the other three indictments. It also appears that defendant lived on the street where the burglarizing was taking place. The defendant's counsel objected to the single trial because part of the defense strategy was to try the four indictments simultaneously, thereby emphasizing the improbability of defendant's burglarizing one home and then another on the same street where he lived, particularly since there was a "big commotion" at the first place.

Control of judicial dockets rests in the court. *Lemoine v. Martineau,* 115 R. I. 233, 342 A.2d 616 (1975). When two or more indictments pending against an accused are assigned to the same day, the prosecution can, all things being equal, choose the indictment it shall try first. *Tate v. Howard,* 110 R. I. 641, 296 A.2d 19 (1972). An accommodation between these two propositions can best be obtained by adapting the rules relating to severance of cases to instances where a defendant seeks one trial where all charges pending against him will be resolved. Joinder, like severance, is a question directed to the sound judicial discretion. A denial of such a motion will not be reversed absent a showing of a clear abuse of that discretion.

The burglary-assault indictments arose from an identical factual situation, while the living room entry incident evolved from separate and distinct circumstances. Separate trials may have safeguarded defendant from being prejudiced with the concurrent trial of the burglary-assault

incidents because the teacher's positive identification of him as the percher in her living room could not then be carried over and establish his guilt in the earlier incidents. Simply put, we see no prejudicial error in the denial of the joinder motion. In fact, we believe that the trial justice's actions were a benefit rather than a detriment to defendant.

Finally, we come to an issue that has been presented to us before in other cases. The defendant is black. The panel from which the jury who heard the evidence was selected was composed of citizens none of whom were members of the black race. Having placed this fact in the record, defendant requested that the trial justice "* * * either inquire, make some inquiry as to the method of selecting this jury panel to determine whether or not there has been any systematic exclusion * * *." The trial justice declined to make such an inquiry and remarked that it was the defense's obligation to show the presence of such exclusion.

We have said that a defendant who complains about an absence from the jury of representatives from an identifiable segment of the community must prove that their absence is due to a preconceived plan conceived by those who are responsible for the formulation of the jury lists. *State* v. *Spivey*, 114 R. I. 43, 328 A.2d 414 (1974); *State* v. *Clark*, 112 R. I. 270, 308 A.2d 792 (1973). The defendant made no effort in this regard at the trial level. Before us he referred to the 1970 census population statistics which have been analyzed by race. The statistics indicate that in 1970 2.68% of the total population of Rhode Island was black, while 8.86% of the total population of the capital city of Providence was black. Although statistical evidence may be an important factor in establishing a prima facie case of racial discrimination in the jury selection process, the figures as presented are meaning-

less and come nowhere near meeting the *Clark* test. *Alexander* v. *Louisiana*, 405 U. S. 625, 92 S.Ct. 1221, 31 L.Ed. 2d 536 (1972); *Swain* v. *Alabama*, 380 U. S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Since the defendant did not sustain his burden of proof, the denial of his request was not error.

The defendant's appeal is denied and dismissed.

*Julius C. Michaelson*, Attorney General, *William Granfield Brody*, Special Asst. Attorney General, for plaintiff.

*Alton W. Wiley*, for defendant.