**STATE**

v.

**Roger LAMOUREAUX.**

**No. 87–460–C.A.**

Supreme Court of Rhode Island.

May 22, 1989.

James E. O'Neil, Atty. Gen., Jeffrey J. Greer and Nicholas Trott Long, Asst. Attys. Gen., for plaintiff.

Robert B. Mann, Providence, for defendant.

## OPINION

FAY, Chief Justice.

This case comes before the Supreme Court on an appeal by the defendant, Roger Lamoureaux, from a Superior Court jury conviction of entry of a building with felonious intent in violation of G.L.1956 (1981 Reenactment) § 11–8–3.[1] The defendant raises several issues that call into question certain rulings made by the trial justice. The pertinent facts of this case are as follows.

On September 27, 1985, the day of hurricane Gloria, a breaking and entering at the Diamond Lumber Company (Diamond Lumber) was reported to the Warwick police department. Following the report, Detective Lieutenant James J. Godbout and Officer Alexander Goula of the police department were dispatched to the scene. Thereafter, defendant was apprehended and subsequently charged with entry of a building with felonious intent.

At trial the two officers testified that upon arriving, they conducted a security check of the outside of Diamond Lumber and found a broken window not visible from the road. Following police department procedure, Godbout noted, he and Officer Goula waited for assisting officers and the police dog. While they were waiting, the two officers shouted repeatedly into the building that police were on the scene and anyone inside should come out immediately. When the officers were notified that the dog was unavailable, they decided to enter the building.

Upon entering the building, Godbout noted that broken glass was all over the floor and that the entire office had been ransacked. Once the officers were inside the building, Lieutenant Godbout commented, he again called out yet received no response. After systematically searching the premises and shouting "[A] police dog is on the premises," Lieutenant Godbout testified, he was startled by a person who approached him from his left side. Then Godbout stated that he pointed his unholstered firearm at the subject, flashed a light into his face, and ordered him to put his hands up. Lieutenant Godbout revealed that approximately five to eight minutes elapsed between his arrival on the scene and the confrontation with defendant.

The state also presented Paul Gagne, an assistant manager at Diamond Lumber Company, as a witness. Gagne testified that because of the hurricane, he had closed Diamond Lumber early. He also noted that defendant had been in the store just prior to closing but failed to purchase anything. The defendant, according to Gagne, had asked questions about what precautions the manager planned to take against the storm.

Following the report of a break-in, Gagne testified, he returned to Diamond

1. General Laws 1956 (1981 Reenactment) § 11–8–3 reads as follows.

"Entry of building or ship with felonious intent.—Every person who, with intent to commit murder, sexual assault, robbery, arson or larceny, shall enter any dwelling house or apartment at any time of the day or night, or who with such intent shall, during the daytime, enter any other building, or ship or vessel, shall be imprisoned not more than ten (10) years or be fined not more than five hundred dollars ($500) or suffer both such fine and imprisonment."

Lumber. He stated at trial that he had secured the building before leaving the premises but that upon reentering, he noticed that the back-office window had been broken, and the cash register key moved. Gagne also noted that the ladies' room door was damaged, a small table saw had been moved, a desk in the office had been pushed to the side, and papers were scattered all over the office floor.

The defendant denied the above allegations and presented conflicting testimony. He admitted being at Diamond Lumber and inquiring about Gagne's plans for the storm. Lamoureaux stated, however, that his only purpose for being at Diamond Lumber was to purchase a roll of tape in order to secure the Central Cafe, his place of business.

When leaving the Central Cafe, defendant testified, he noticed two youths climbing the fence of Diamond Lumber in an attempt to exit the premises. The defendant stated that he entered the property to apprehend the juveniles. After failing to catch the youths, defendant claimed, he noticed a broken window and entered the building through that window. It was about twenty to twenty-five seconds later, defendant testified, that a police officer told him not to move.

Gerald Giacobbi, the operations manager of American Alarm Company, certified that on September 27, 1985, the company operated a motion-detection alarm system at Diamond Lumber. In addition, Giacobbi provided the jury with information regarding the general response time following the report of an alarm. Giacobbi, however, was unable to testify with certainty when the company received notice of the activation of the alarm from Diamond Lumber or when it notified the Warwick police department. Owing to Giacobbi's uncertainty the trial justice did not allow the witness to testify on this topic.

Finally defendant presented two character witnesses: the Reverend Richard L. Meglio and Dr. Robert C. Reynolds. Each witness testified that defendant had a reputation for truthfulness in the community. On cross-examination the witnesses were asked about their knowledge of Lamoureaux's arrests for other offenses. Neither witness was completely aware of the extent of Lamoureaux's prior arrests. At the close of the presentation of evidence, defendant was found guilty by a jury of entry of a building with felonious intent.

First, defendant maintains that the trial justice should not have admitted evidence of specific instances of bad conduct in the cross-examination of character witnesses. Additionally defendant contends that even if the evidence was admissible, the arrests were not relevant because they were not contemporaneous with the charge.

■ Initially, we note that we have not directly faced the issue of whether specific instances of conduct should be permitted in the cross-examination of character witnesses. In *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948), however, the United States Supreme Court allowed a prior arrest to be raised on cross-examination to impeach a defendant's character witnesses. The prosecutor, according to the Court, has a right to test the qualification of the witnesses to "bespeak the community opinion." The *Michelson* Court also stated that a defendant, by attempting to prove his good name, opens up a subject otherwise closed by law for his protection.

By calling the Reverend Richard L. Meglio and Dr. Robert C. Reynolds as character witnesses, defendant voluntarily placed his reputation in the community in issue. On cross-examination the state challenged the basis of the witnesses' knowledge by asking if they had heard of defendant's prior arrests. In response, it was revealed that Dr. Reynolds knew nothing of consequence about defendant's arrests, and Reverend Meglio emerged confused and uncertain.

Furthermore, the trial justice took precautions to ensure that the testimony regarding defendant's prior arrests and character was properly limited. In admitting the evidence, the trial justice stated that defendant's prior arrests were not to have any bearing on his guilt or innocence but were only admissible to test the character witnesses' credibility and basis of knowledge regarding defendant's community rep-

utation. We therefore find that the trial justice properly admitted the evidence within the guidelines of *Michelson*.

■ The defendant's contention that the evidence of defendant's arrests was irrelevant because they were not contemporaneous with the charge is without merit. The alleged entry of the building occurred on September 27, 1985. The arrests at issue took place on June 9, 1986, and October 10, 1986. The trial was held from December 10 to 15, 1987. The arrests were admitted to test the witnesses' basis of knowledge and credibility concerning defendant's current reputation in the community. Therefore, we find that the question of whether the witnesses had knowledge about defendant's arrests in the past year and a half was highly relevant.

■ The defendant also asserts that the trial justice should have granted defendant's motion for judgment of acquittal. It is well established that we review the particular evidence presented on such a motion in the light most favorable to the state. *State v. Lemon*, 497 A.2d 713, 718 (R.I. 1985). We believe that *State v. Johnson*, 116 R.I. 449, 358 A.2d 370 (1976), is controlling. In *Johnson* we denied the defendant's motion for acquittal and stated, "There is a substantial body of law which holds that an unexplained, unlawful breaking and entering into a dwelling or building containing personal property * * * raises an inference that illegal entry was made with the intent to commit larceny." 116 R.I. at 454, 358 A.2d at 373.

In this case, evidence was presented at trial that defendant knew that no one would be present in the building. The window used as a point of entry was not in sight of the public roadway. Ample notice was provided to defendant that the police were on the premises, yet defendant failed to appear until the officers indicated that a police dog was on the scene. Finally, property of substantial value was located in the building and defendant's entry was unauthorized. Therefore, we find that sufficient evidence existed for the trial justice properly to deny defendant's motion for judgment of acquittal.

■ Next defendant claims that the jury instructions were improper. We note that we shall not allow the extraction of one sentence to show an incorrect statement of law; rather our review consists of an entire charge. *State v. Hadrick*, 523 A.2d 441, 444 (R.I.1987); *State v. Lambert*, 463 A.2d 1333, 1338 (R.I.1983). Furthermore, we recognize the right and power of a trial justice to instruct the jury in his or her own words. *State v. Andrade*, 544 A.2d 1140, 1143 (R.I.1988).

■ The defendant challenges the trial justice's instruction to the jury that if it found certain facts, it "had the right" to infer defendant intended to commit larceny. Even if the instruction was proper, defendant contends, the justice should have informed the jury that this inference did not require a finding of intent to commit the crime. Finally defendant maintains that an analogy presented in a supplemental charge to the jury concerning defendant's intent was improper. We find that the original and the supplemental jury instructions, viewed in their entirety, did not create a mandatory presumption and were therefore proper.

■ Lastly defendant contends that the trial justice committed reversible error by limiting Gerald Giacobbi's testimony. The trial justice sustained objections to questions regarding the time that elapsed between receiving the alarm and notifying the police department. Our standard of review of rulings on the admission or exclusion of evidence on relevancy grounds is whether a trial justice abused his discretion. *State v. Brennan*, 527 A.2d 654 (R.I. 1987).

Giacobbi, the operations manager of American Alarm Company, could not specify the time that elapsed before the police department was informed of the break-in. The theory, if allowed, would have no basis in fact and would be based on pure speculation. We have previously stated that relevant evidence is that which tends to establish a material proposition. The evidence presented could not establish a material

proposition, and therefore, the trial justice properly excluded this line of questioning.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment appealed from is affirmed, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.