STATE

v.

Roger LAMOUREUX.

No. 89–121–C.A.

Supreme Court of Rhode Island.

May 4, 1990.

James E. O'Neil, Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., Jane McSoley, Sp. Asst. Atty. Gen., for plaintiff.

Robert Mann, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on the appeal of the defendant, Roger Lamoureux, from a judgment of conviction entered in the Superior Court on a multicount indictment that charged the defendant with one count each of burglary, assault with intent to commit first-degree sexual assault, assault with a dangerous weapon, and assault. The judgment was entered after a jury trial in the Superior Court for the County of Kent. The trial justice denied the defendant's motion for a new trial on March 31, 1988. The defendant was sentenced to terms of imprisonment on all four counts to be served concurrently. We affirm the judgment of conviction. The facts of the case insofar as pertinent to the defendant's appeal are as follows.

On June 8, 1986, Laura Hall and Karen Porter were patrons at the Central Cafe in Apponaug when they encountered defendant who was the owner of the bar. Both women knew defendant and stated that on prior occasions he had made unsuccessful advances of a sexual nature toward them. Nevertheless, defendant came to their table and engaged in conversation with them. Both women had been drinking prior to their arrival at the cafe and continued to drink while they were at this establishment

until just before closing time. One defense witness testified that Lamoureux had asked Hall and Porter if they wanted to go with him and "do drugs." The witness testified that Hall and Porter acquiesced. However, the testimony of Hall and Porter was unequivocal to the effect that they left the bar without Lamoureux and went to the home of Hall. Another witness for the defense, Carol Socia, testified that she saw Hall and Porter in the parking lot when she (Socia) left the bar with Lamoureux.

According to their testimony, Hall and Porter drove to Hall's apartment where they both had additional alcoholic beverages before going to sleep in the bedroom. Karen Porter testified that she awoke suddenly at approximately 4 a.m. and saw defendant, without clothing, on top of Hall who was trying to push him away. With that observation, Porter obtained a ski with which she struck defendant in order to get him to leave Hall alone. When this effort did not succeed she seized a baseball bat and struck him on the back with it. The defendant grabbed the bat from Porter and knocked her down with his fist. Hall picked up the ski, possibly to use as a weapon against defendant. He responded by striking Hall in the head with the bat, causing serious injuries. When Hall regained consciousness, she asked defendant to leave the house and he complied. Porter summoned the police, who searched the area and found defendant hiding underneath a bush. He was arrested and advised of his *Miranda* rights. Hall was transported to the hospital where she was treated for a fractured skull, a fractured nose, a laceration over her right eye, a contusion on the right eyelid and a concussion.

After defendant was arrested, he was taken to the Warwick Police Station and was again advised concerning his *Miranda* rights. He stated to the officers that he had been at Hall's apartment and that she attacked him. He further stated that he had not penetrated Hall sexually and that he would voluntarily provide the police with a semen sample. In the course of the trial Sergeant McGurn of the Warwick Police Department testified that he was driving his patrol car on Arnold's Neck Road at about 3:30 a.m. on the morning of June 9, 1986, when he observed Roger Lamoureux (who was known to McGurn from previous contacts) walking down the road. About thirty minutes later he was ordered to go to 234 Arnold's Neck Road (later determined to be Hall's apartment house) where he found Porter and Hall. Hall was semiconscious and bleeding from the mouth and nose.

In support of his appeal defendant raises five issues that will be/dealt with in the order in which they are addressed in defendant's brief. Further facts will be supplied as necessary to deal with these issues.

ISSUES I and II:

THE PRESENCE OF MARIJUANA

█ The first two issues are based upon an argument that defendant was entitled to a new trial because of prosecutorial misconduct in failing to notify defendant that an ashtray in Hall's apartment contained at least one marijuana cigarette and certain associated paraphernalia. Among the state's exhibits was a photograph that was introduced in order to show a partly empty beer bottle and a half-finished drink on a coffee table in Hall's apartment. As the trial justice suggested, this photograph was intended to buttress the credibility of Hall and Porter, who had testified that before going to bed they had each partially consumed another drink.

The photograph had been furnished to counsel for the defense prior to trial. In an in-chambers conference during the trial it was noted, probably by the trial justice, that on the same coffee table as the partly consumed alcoholic beverage there appeared to be a hand-rolled cigarette that bore an unmistakeable likeness to what is commonly referred to as a "joint." Also on the coffee table was an empty clear plastic bag and a strainer. The trial justice noted in his decision on the motion for new trial that these items pointed to the fact that the hand-rolled cigarette contained marijuana. The in-chambers conference took place af-

ter the cross-examination of both Hall and Porter.

Neither counsel had inquired about the marijuana cigarette in their examinations of these witnesses. The defendant's counsel stated that he might recall one or both of the witnesses to verify the apparent presence of a marijuana cigarette on the table. Defense counsel decided not to do so. Rather, in his final argument to the jury, defense counsel pointed out with the aid of a magnifying glass that a marijuana cigarette and other paraphernalia were on the coffee table. The prosecuting attorney in response to this argument pointed out that the presence or absence of marijuana made no difference but also suggested that there was no evidence on the record indicating whether the cigarette contained marijuana and there was no evidence of consumption.

The thrust of defendant's claim that he is entitled to a new trial is based upon a fact that came to light after the trial was completed. Prior to the final argument of counsel, the prosecuting attorney had inquired of Hall and Porter concerning the cigarette in the photograph. They told him that the cigarette did contain marijuana, but both denied that they had smoked marijuana on the night in question. The defendant argued that the failure to reveal this information was a violation of the prosecutor's duty to disclose and warrants a new trial under the principles enunciated by this court in *State v. Wyche*, 518 A.2d 907 (R.I. 1986). In support of defendant's motion for a new trial, both women testified that the cigarette did contain marijuana but denied that they had smoked any on the evening in question.

The trial justice, in considering a motion for new trial on this ground, distinguished the *Wyche* case wherein the prosecution failed to notify the defense of alcohol-test results that indicated that the complaining victim of a sexual assault had a high blood alcohol content that would have affected her credibility on the issue of consent as well as her perception of events on the evening of the alleged sexual assault. The trial justice pointed out that in this case

defense counsel was aware of the photograph and also was aware of what it probably contained. He stated that defense counsel could have recalled both of the women to verify that the cigarette contained marijuana. He also pointed out in his colloquy with defense counsel that had counsel not desired to ask the question of these witnesses before the jury, he could have requested to examine the witnesses in the absence of the jury and that such an option would have been open to him. Defense counsel did not choose to exercise such an option. Nevertheless, the trial justice was aware that the prosecutor did not notify defendant of his having verified the presence of marijuana with Hall and Porter before the argument. The trial justice then made the following comments:

"Did this nondisclosure prejudice the defendant? Was this evidence of high value to the defense in this case? In my firm opinion the answer to these questions must be an emphatic no. In the first place, the defense did bring to the jury's attention the apparent presence of marijuana. Plainly, judging from its verdict, the mere presence of this small amount of marijuana mattered not at all to this jury. Cross-examination of these two women already had disclosed to the jury they had been drinking all night long. They described their condition as "feeling good." It was not lost upon this jury, and no jury could have doubted that the two women were fairly well intoxicated when they returned to Laura Hall's apartment. The jury also knew Laura Hall had a prior conviction for marijuana possession. A great deal of impeaching evidence had already been placed before this jury. And, of course, as a result of the photograph, the jury was not unaware of the apparent presence of marijuana in the residence. Mr. Mann made sure in his summation that the jury did not overlook it. Disclosure to the defense by the prosecutor of that which the defense was already aware, and which the defendant could have further explored, indeed at one point indicated during the trial he might want to do that, would have benefited the defendant not

at all. In any event, the jury was not shielded from this material which was depicted in Exhibit 6, anyway. Both of these women were subjected to searching, and at a point, scathing cross-examination. That cross-examination severely tested their credibility. Had the defendant wanted to further inquire about the marijuana, he could have. He chose not to do so. There's no question in my mind that that which the defendant now complains of by way of the prosecutor's nondisclosure would not have made any difference whatsoever in this jury's verdict. There is no way that the result would have been different. Not by the most elastic stretch of the most fertile imagination would this information have impacted on the verdict in this case. To the extent it was error by the prosecutor not to have disclosed his verification of what the defendant already knew, it was harmless error beyond all doubt. The type of nondisclosure here is in no way, and does not in any way approach that which was condemned in *Wyche.* Also, unlike *Wyche,* our case includes other evidence of guilt beyond just testimony of the complainants. Parenthetically, had their testimony——even were it to have included the presence of marijuana in the apartment——their testimony was, in my view, most credible."

After our analysis of the record, we agree with the trial justice that the presence of marijuana in the quantity observed would have made no difference in the outcome of the case. This case does not implicate the doctrine of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny since in effect the evidence had been disclosed by the photograph and witnesses were available to the defense who would have verified the information if desired. In effect, the evidence was not exculpatory and the prosecutor could not be faulted for having regarded it as insignificant. Even the police officers who had noted the small quantity of marijuana at the scene of the incident considered it too small a sample to test.

The trial justice was correct in his determination that this issue was without signif-

icance. The disclosure by the prosecution of his verification of the presence of marijuana would not have added substantially to the information that defense counsel already had and which he could himself have verified by recalling one or both of the witnesses. Consequently we are of the opinion that the trial justice did not err in denying defendant's motion for a new trial.

## ISSUE III:

## INSTRUCTIONS TO THE JURY

### A Burden of Proof

The defendant argues that the trial justice's instruction in respect to the requirement of proof on the issue of assault with intent to commit sexual assault was in error in that he inadvertently shifted the burden of proof on the issue of consent to defendant. With this argument we must totally disagree. The trial justice instructed the jury that the state had the burden of proving beyond a reasonable doubt each and every element of the offenses charged. We have said that the instructions of a trial justice will be examined in their entirety in order to determine the manner in which a jury of ordinarily intelligent lay persons would have understood the instruction as a whole. *State v. Andrade,* 544 A.2d 1140, 1143 (R.I.1988); *State v. Hadrick,* 523 A.2d 441, 444 (R.I.1987). We cannot isolate each portion of the charge in order to determine its adequacy. When this instruction is considered in its entirety, there is utterly no doubt that the trial justice adequately informed the jury that the burden of proof never shifts and that the state bore this burden in respect to the issue of consent as well as the issue of intent. The defendant's argument on this point is not persuasive.

### B Instructions on Self–Defense

■ The defendant contends that the trial justice's instruction on the issue of self-defense was inadequate because the justice stated that in no set of circumstances may one use more than that degree of force necessary to prevent bodily injury. The trial justice had preceded this portion of

the instruction by stating that "the law of self-defense holds that a person may defend himself whenever he reasonably believes that he is in imminent danger of bodily harm at the hands of another."

In our opinion the trial justice had given to defendant an instruction more beneficial than that to which he was entitled. The evidence in this case indicated that defendant was engaged in the act of sexually assaulting Hall when Porter attempted to deter him by striking him first with a ski and then with a baseball bat. After he had knocked Porter unconscious, Hall attempted to ward him off with the ski when he struck her with the baseball bat. The evidence in the case shows beyond doubt that defendant was the aggressor. We have stated in *State v. Guillemet*, 430 A.2d 1066, 1068–69 (R.I.1981), that one may not invoke the doctrine of self-defense if he or she has instigated the combative confrontation. "Self-defense is grounded on necessity; one cannot provoke a difficulty, thus creating the necessity, and then justify the resulting homicide or injury as an act of necessity and self-defense." *Id.* (citing *State v. Millett*, 273 A.2d 504 (Me.1971)).

A fortiori if one is feloniously present in the dwelling house of another, he may not attack the victim and then rely upon the doctrine of self-defense in order to protect himself from the consequences of his felonious presence and aggression. *See* G.L. 1956 (1981 Reenactment) § 11–8–8, as amended by P.L.1984, ch. 212, § 1; *see also In re Paul F.*, 543 A.2d 255 (R.I.1988); *State v. Woods*, 374 N.W.2d 92 (S.D.1985). In our opinion defendant in this case could not have legally benefited from the doctrine of self-defense unless he had exhausted every method of retreat from an encounter he himself had provoked.

Consequently the trial justice committed *no prejudicial error in his instruction on self-defense.*

## ISSUE IV:

## THE CROSS–EXAMINATION OF KAREN PORTER

██ The trial justice sustained the objection to a question posed by defense counsel to Karen Porter. The question was posed in the following context:

"Q. And then what did you see Roger do, hit her in the head with the baseball bat?

"A. Yeah.

"Q. And it's possible he could have been defending himself?

"Mr. DeCubellis: Objection.

"The Court: Sustained."

In light of our discussion of the doctrine of self-defense as it would be applicable to an aggressor, this subject does not require extended analysis.

Even if the doctrine of self-defense was properly applicable to defendant, the question certainly called for a mixed conclusion of fact and law on the part of the witness that she was utterly unqualified to give. The ultimate issue of self-defense is not a subject upon which a lay witness is permitted to expound. The witness was carefully examined concerning the facts and circumstances that she observed. It was then the task of the jury to determine whether defendant's actions were justified under principles of self-defense in accordance with the trial justice's instructions. We have already concluded that those instructions were highly favorable to defendant. The subject of inquiry to this witness Karen Porter was wholly inappropriate, regardless of what her testimony before the grand jury may have been. The trial justice committed no error in exercising his discretion to exclude this improper question.

## ISSUE V:

## THE MOTION FOR JUDGMENT OF ACQUITTAL

██ The defendant moved for judgment of acquittal under Rule 29 of the Superior Court Rules of Criminal Procedure in respect to the charge of burglary. He premised this argument on the fact that there was no basis from which one could infer an intent to commit a felony at the time of the entry into Hall's apartment. With this argument we must respectfully disagree.

The standard a trial justice must apply when presented with a motion for judgment of acquittal is well settled in this jurisdiction. He must view the evidence in the light most favorable to the state and must draw all reasonable inferences that are consistent with the guilt of the accused. "Neither the weight of the evidence nor the credibility of the witnesses may be considered in passing upon such a motion." *State v. Moosey,* 504 A.2d 1001, 1006 (R.I. 1986) (quoting *State v. Lemon,* 497 A.2d 713, 718 (R.I.1985)).

When the evidence is viewed in such a light, there is no question that a trier of fact might infer that the defendant's intent to commit a felony upon his entry to the dwelling was demonstrated by his subsequent action, namely, an attempt to commit a first-degree sexual assault. It is reasonably obvious that intent may only be determined in the ordinary course of events by the subsequent actions of the accused. *See generally State v. Johnson,* 116 R.I. 449, 358 A.2d 370 (1976). In this instance the evidence indicated that the defendant made a most vigorous attempt to assault Laura Hall sexually. The inference that he intended to commit sexual assault upon this victim or her companion when he entered the dwelling is a most reasonable inference to draw. The motion for acquittal of the charge of burglary was properly denied.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment of conviction is affirmed. The papers in the case may be remanded to the Superior Court.