**Supreme Court**

No. 2014-354-C.A.

(K2/13-467A)

State                          :

v.                          :

John Benoit.                          :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2014-354-C.A.
(K2/13-467A)
(concurrence and dissent
 begins on page 12)

|  |  |
|---|---|
| State | : |
| v. | : |
| John Benoit. | : |

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.**  This case is before the Court on appeal by the defendant, John Benoit, from judgment after a jury convicted him on one count of entering an apartment with the intent to commit larceny.  The defendant received a four-year sentence, with eighteen months to serve and thirty months suspended, with thirty months of probation.  On appeal, the defendant argues that the trial justice erred by: (1) denying his motion for judgment of acquittal, based on his assertion that the state failed to produce sufficient evidence of his intent to commit larceny at the time he entered the apartment; and (2) denying his motion for a mistrial and for a cautionary instruction.  This matter came before us, sitting at Smithfield High School, on April 6, 2016, pursuant to an order directing the parties to appear and show cause why the issues raised by this appeal should not summarily be decided.  After considering the parties' oral and written arguments, and after examining the record, we are of the opinion that cause has not

been shown and that this case can be decided without further briefing or argument. For the reasons discussed below, we affirm the judgment of conviction.

**1**

**Facts and Travel**

"Times are tough." This was probably not quite the reaction the complaining witness, Christopher Gervais, expected from defendant, John Benoit, when he confronted the tradesman as he was rifling through the wallet Mr. Gervais kept on top of his bedroom dresser. Although that response may have been surprising, defendant's presence in Mr. Gervais's apartment was not totally unexpected. That is because, in April 2013, Cowesett Hills, an expansive apartment complex located in Warwick, was undergoing renovations to replace 3,000 windows and some 1,500 to 2,000 sliding glass doors. The defendant was one of the workers hired to complete this yearlong project. As a member of the crew tasked with completing the project, Benoit's primary responsibility was installing the trim and caulking around the new doors and windows. When he later testified at trial, Mr. Gervais said that he had received written notice that work would be done on the sliding glass door in the living room of his apartment. However, he was under the impression that the work on his bedroom window had been completed because he had been sent a separate notice about work being done on that window about a week earlier. That window already had been replaced "so there was no reason [for defendant] to be in the bedroom." As Mr. Gervais understood it, the notice the management company provided described the work to be done that day, but it was "only for the back sliding window and the workers w[ould] only need to be at that part of the unit inside each apartment" and "[t]here was absolutely no reason why anybody should [have been] inside [his] bedroom."

Mr. Gervais testified that his girlfriend and another friend had spent the previous night at his home, but that they had left in the morning. The friend left sometime after defendant arrived to work on the sliding door. Mr. Gervais remained in bed after his guests left that morning, but he was awakened by the sound of his bedroom door opening about an hour after the work began in the living room. He said that "[w]hen I woke up, [defendant] was going through * * * my wallet to find some sort of valuables or cash." He said that he noticed when defendant entered the room, he immediately turned right to where the dresser was, "looking for where items were situated in any typical bedroom," and "[a]s soon as he saw the wallet, he opened it up to see what was in there." Mr. Gervais also testified that, at no point while defendant was in his bedroom, did defendant attempt to approach the bedroom window or even look in the direction of the window.

Having seen enough, Mr. Gervais confronted defendant and asked him, "[C]an I help you?" According to Mr. Gervais, defendant appeared "very nervous and startled" when he realized that Mr. Gervais was still in the apartment. When asked why he was going through the wallet, defendant responded that "times are tough" and that "he really didn't mean to do anything personal and steal from [Mr. Gervais]." Mr. Gervais said that defendant, in an apparent attempt to make amends, then offered to buy him a case of his favorite beer. After defendant put the money back, Mr. Gervais asked him to leave. However, before he left the apartment, defendant finished putting up the blinds in the living room, and wrapped up his work on the sliding glass door.

Irked by this incursion, Mr. Gervais called the police. After the police arrived, he made a statement and described defendant as having a thin build, pronounced veins in his arms, and gray hair. Officer Robert Hart of the Warwick police department testified that, on the morning in

question, he received a dispatch call to respond to the Cowesett Hills apartments. Over defendant's objection, Officer Hart testified that the call was for a "[p]ossible burglary in progress."

At that point, defendant moved for a mistrial, arguing that, although he was on trial for entering an apartment with the intent to commit larceny, the jury had just heard irrelevant hearsay evidence regarding a possible burglary, the prejudicial effect of which was so severe that a mistrial was warranted. The trial justice denied the motion, reasoning that the testimony was not hearsay because it did not go to the truth of the matter asserted, but rather to the state of mind of Officer Hart at the time he was responding to the call. The defendant then asked for a cautionary instruction that the testimony was "introduced only to explain why the police officer ever arrived at the apartment complex," but "not to consider it as evidence of breaking and entering." The trial justice denied the request as unnecessary, stating that the testimony "didn't go to whether the burglary was in place, it went to why did he respond to this address." Officer Hart went on to say that after he arrived on the scene, he took a statement from Mr. Gervais and then asked Mr. Gervais to come outside to see if he could identify the perpetrator. He said that, when they stepped outside there were a number of workers present, that Mr. Gervais immediately identified defendant as the person involved, and that he made note of the fact that defendant had pronounced veins in his arms and a slim build.

Officer James Michailides of the Warwick police department also testified. He said that, when he responded to the Cowesett Hills apartment complex, he was approached by Mr. Gervais. After speaking briefly with Mr. Gervais, he sent him back to his apartment to wait for Officer Hart to arrive. Meanwhile, Officer Michailides spoke with a group of men working at the other end of the building. As he approached, he noticed that defendant fit the description

of the suspect that had been provided to him, including the pronounced veins in his arms. He asked defendant what had occurred; at first, defendant denied being involved. However, after Officer Michailides asked the whole group of men what happened, defendant conceded that he had indeed taken money, but said that he had immediately put it back. Lastly, Officer Michailides testified that in Mr. Gervais's apartment the sliding glass door was located in the rear of the apartment, and his bedroom was located by the front door.

After Officer Michailides testified, the state rested. The defendant then made a motion for judgment of acquittal, arguing that the evidence established that he was in the apartment to work but that there was no evidence that defendant had the intent to commit larceny at the time he entered Mr. Gervais's apartment. He argued that the state could not "invite the jury to speculate about some other possible intent, [as] he was there to work." Specifically, defense counsel argued that the evidence was that he went to the apartment to complete the work there and at some point entered the bedroom, but that what occurred after he entered the apartment was not relevant, and that there was no circumstantial evidence of intent that justified giving the case to the jury.

The state argued that the motion for judgment of acquittal had to be denied based on Mr. Gervais's testimony, because his testimony, if believed, was that he watched defendant enter his bedroom, go directly to his dresser, and rifle through his money. The state asserted that Mr. Gervais had testified that defendant told him that "times were tough, indicating that this defendant was in need of some money prior to entering the apartment," which, the state argued, was circumstantial evidence of defendant's intent. The state argued that, from all of this evidence, the court could infer that defendant had the requisite intent to commit larceny. The

state also argued that it was plausible that, when defendant entered the apartment, he simultaneously had the intent to both work on the apartment and to commit larceny.

The trial justice denied defendant's motion, ruling that it was premature to take the case away from the jury because there was evidence that the jury could consider to find intent. The trial justice said that, even accepting defense counsel's argument that defendant's intent to commit larceny needed to be formed at the time he entered the apartment, he believed there was a sufficient level of direct and circumstantial evidence that would allow a jury to make reasonable inferences about defendant's intent at the time he entered the apartment.

The defendant called one witness, Henry Bozzo, to testify on his behalf. He said that, in April 2013, he was working on a yearlong project to replace all the windows and doors at the Cowesett Hills apartment complex. He testified that he hired defendant to work on the job and that, on the day of the incident, defendant's job was to work on the trim on the inside of the apartments, including caulking the windows and cleaning up afterwards. He testified that, although workers were instructed to inspect every window before they left, the workers were allowed to touch only the windows or doors they were working on and that they were allowed to touch only furniture that needed to be moved. He confirmed that if a worker was caulking a bedroom window, "[a]t the end of the day, before we lock up we check, [and] make sure everything is done," including "look[ing] at the doors on the way out."

After defendant rested, he renewed his motion for judgment of acquittal. The trial justice said that nothing in Mr. Bozzo's testimony had altered his decision to allow the case to go to the jury, and he again denied the motion. In so doing, the trial justice pointed out that Mr. Bozzo's testimony—that there would have been no need for defendant to touch any furniture or other personal belongings—would actually aid the jury in its deliberations about defendant's intent.

The jury returned a verdict of guilty on one count of entering an apartment with the intent to commit larceny. The defendant filed a timely notice of appeal.[1]

## 2

## Issues on Appeal

On appeal, defendant assigns two errors to the trial justice. First, he argues that the trial justice erred in denying his motion for judgment of acquittal because the state failed to provide sufficient evidence that he had the intent to commit larceny at the time he entered Mr. Gervais's apartment. He asserts that, when he entered the apartment, it was with the intent to work on the glass sliding door and bedroom window and that he did not enter the bedroom and handle the cash on the dresser until approximately an hour later. As he sees it, there was no evidence produced of any activity that would suggest a criminal intent before he entered the residence. He also argues that his conduct while he was in the bedroom does not suffice to prove his intent before he went into the apartment.

Second, defendant argues that the trial justice erred in denying his motion for a mistrial and for a cautionary instruction after Officer Hart testified that he responded to a call for a "[p]ossible burglary in progress." He argues that this testimony was hearsay and was prejudicial and that it was erroneous to allow it without a cautionary instruction.

---

[1] The defendant's notice of appeal was prematurely filed. Nonetheless this Court has said that in "cases in which an appeal has been prematurely filed, it will 'treat the appeal as if it had been timely filed after judgment was entered.'" Arnold Road Realty Associates, LLC v. Tiogue Fire District, 873 A.2d 119, 125 n.4 (R.I. 2005) (quoting United Lending Corp. v. City of Providence, 827 A.2d 626, 631 n.9 (R.I. 2003)).

**3**

**Denial of the Motion for Judgment of Acquittal**

**A**

**Standard of Review**

Rule 29(a)(1) of the Superior Court Rules of Criminal Procedure provides that the trial justice must order an entry of judgment of acquittal when "the evidence is insufficient to sustain a conviction" of one or more of the offenses charged. In reviewing the denial of a motion for a judgment of acquittal, a defendant must overcome a decidedly high bar in that "we apply the same standard as that applied by the trial justice; namely, we must view the evidence in the light most favorable to the state, * * * giving full credibility to the state's witnesses, and draw[ing] therefrom all reasonable inferences consistent with guilt." State v. Gomez, 116 A.3d 216, 224–25 (R.I. 2015) (quoting State v. Rolon, 45 A.3d 518, 523 (R.I. 2012)); see also State v. Fleck, 81 A.3d 1129, 1133 (R.I. 2014). The denial of the motion will be upheld when "the totality of the evidence so viewed and the inferences so drawn would justify a reasonable juror in finding a defendant guilty beyond a reasonable doubt * * *." Gomez, 116 A.3d at 225 (quoting State v. Snow, 670 A.2d 239, 243 (R.I. 1996)).

**B**

**Analysis**

The defendant argues that the trial justice erred when he denied his motion for judgment of acquittal because "the evidence presented at trial * * * utterly failed to establish that Mr. Benoit possessed the intent to commit larceny when he entered Mr. Gervais'[s] apartment to perform work." In our opinion, the trial justice did not err in denying defendant's motion for a judgment of acquittal.

This Court has made the observation that "[i]t is reasonably obvious that intent may only be determined in the ordinary course of events by the subsequent actions of the accused." State v. Lamoureux, 573 A.2d 1176, 1181 (R.I. 1990). Viewing the evidence in the light most favorable to the state and giving full credibility to its main witness, Mr. Gervais, several observations about defendant's actions establish reasonable inferences of guilt. First, according to Mr. Gervais, the work that was to be done that day was limited to replacing the sliding glass door in the living room. Indeed, Mr. Gervais testified that the work to the window in the bedroom had already been completed, and that "[t]here was absolutely no reason why anybody should [have been] inside [his] bedroom." For the purposes of the motion, Mr. Gervais's testimony must be taken as true.

To explain his presence in the bedroom, defendant points to Mr. Bozzo's testimony that defendant was instructed to inspect every window and door before he left the apartment. However, two facts undercut defendant's argument that he was in the bedroom to inspect the window: Defendant did not enter the bedroom until after Mr. Gervais's friend had left the apartment that morning and he did so while he was still working on the sliding glass door. Moreover, when Mr. Gervais caught defendant rummaging through his wallet, defendant in no way attempted to justify his presence in the bedroom, either while in the bedroom or before he finally left the apartment, nor did he ever explain that he was ordered to inspect the window in the bedroom. Finally, even if defendant was authorized to enter the bedroom to check the condition of the window, Mr. Gervais's testimony was clear that defendant never even looked in the direction of the window, but instead walked directly to the dresser, and immediately started "looking for where items were situated in any typical bedroom." It would not be unreasonable for a jury to draw the inference that defendant intended to commit larceny when he entered the

apartment, and therefore, that there was sufficient evidence, if accepted by the factfinder, to convict him of entering the apartment with the intent to commit larceny.

## 4

### Denial of Motion for Mistrial and for a Cautionary Instruction

#### A

#### Standard of Review

This Court will not disturb a trial justice's ruling on a motion to pass the case and declare a mistrial unless there is an abuse of discretion. State v. Tully, 110 A.3d 1181, 1190-91 (R.I. 2015); see also State v. Fry, 130 A.3d 812, 828 (R.I. 2016). We defer to the trial justice in this regard because he or she "has a front-row seat at the trial and is in the best position to determine whether a defendant has been unfairly prejudiced." Tully, 110 A.3d at 1191 (quoting State v. Oliveira, 882 A.2d 1097, 1127 (R.I. 2005)). In the instance of potentially prejudicial statements, a mistrial is warranted only where the "inappropriate remark * * * has so inflamed the jurors that they no longer would be able to decide the case based on a calm and dispassionate evaluation of the evidence." State v. Tucker, 111 A.3d 376, 388 (R.I. 2015) (quoting State v. Lynch, 854 A.2d 1022, 1033 (R.I. 2004)).

#### B

#### Analysis

We are unconvinced that the trial justice abused his discretion in denying the defendant's motion for a mistrial or that he abused his discretion when he refused to give a limiting instruction as a result of Officer Hart's statement that he was responding to a "[p]ossible burglary in progress." The trial justice determined that the testimony regarding the dispatch call was admissible, not for its truth, but because it indicated the officer's state of mind when he

drove to the apartment complex.  In discussing this issue at sidebar, the following exchange took

place:

> "[Defense Counsel]: Now I'm asking you to instruct the jury —
>
> "THE COURT: Read the question back.  My comment was he was responding to a specific question from counsel.  I think the jury heard the question and heard his answer and the question didn't go to whether the burglary was in place, it went to why he responded to this address.
>
> "[Defense Counsel]: I understand your ruling, but I'm asking for a cautionary instruction from you that evidence is not to be used against him, for the simple reason whether it goes to the police officer's state of mind.
>
> "[Prosecutor]: I don't really know if that is necessary. The only question was, 'Why were you dispatched to the call?'  I did not expound on if there was a burglary in progress.
>
> "THE COURT: I agree with [the prosecutor].  The nature of the question had nothing to do with burglary.  It had to do with why he was called to the address.  So I don't think a cautionary instruction is necessary."

Officer Hart's answer did not prejudice defendant to the extent that a mistrial or cautionary

instruction was warranted.  It is clear from the record that Officer Hart was in no way suggesting

that a burglary had in fact taken place.  The defendant misses the mark by focusing only on part

of his response—"burglary in progress"—when he says that "the jury * * * was permitted to

consider evidence of a more serious felonious and larcenous act than the one alleged in the case."

Viewing Officer Hart's full answer in context, that he was dispatched to respond to a "[p]ossible

burglary in progress," undercuts the defendant's claim. (Emphasis added.)  We see nothing in

that answer that could in any way be construed as indicating that the defendant actually

committed a burglary and, therefore, in the exercise of his considerable discretion, the trial

- 11 -

justice did not err when he denied the defendant's motion to pass or request for a cautionary instruction.

## Conclusion

For the reasons stated in this opinion, we affirm the judgment of conviction. The papers are remanded to the Superior Court.

**Justice Robinson, concurring in part and dissenting in part.** I am pleased to be able to concur in the opinion of the Court regarding the denial of the motion for mistrial and for a cautionary instruction. However, with respect to the judgment of acquittal issue, I respectfully dissent. I do not do so lightly—especially in view of the fact that no other member of the Court shares my view concerning this issue. I have very carefully considered the articulate arguments of counsel and the carefully crafted opinion of the majority, but in the end I remain unpersuaded by the reasoning of the majority with respect to the judgment of acquittal issue. I am definitely convinced that a judgment of acquittal should have been granted in this case. I am quite simply unable to perceive in the record evidence of the defendant's intent sufficient for a rational jury to reach a finding of guilt.

I consider it to be of capital importance to keep constantly in mind the fact that the only charge against defendant was, in the words of the Criminal Information, "enter[ing] the apartment * * * with the intent to commit larceny * * *." As such, the entire focus should be on defendant's state of mind at the moment of his entry into the apartment. I have found absolutely nothing in the record that constitutes evidence of defendant having a larcenous intent at that crucially important point in time.

I am well aware that a motion for judgment of acquittal pursuant to Rule 29 of the Superior Court Rules of Criminal Procedure requires that the evidence be viewed "in the light most favorable to the prosecution, giving full credibility to its witnesses, and drawing all reasonable inferences consistent with guilt." State v. Ferrer, 92 A.3d 138, 144 (R.I. 2014) (internal quotation marks omitted); see State v. Gomez, 116 A.3d 216, 224-25 (R.I. 2015); State v. Fleck, 81 A.3d 1129, 1133 (R.I. 2014). However, while I have tried conscientiously to scrutinize the record in that light, I nonetheless have been unable to isolate any evidence that is indicative of defendant's intent, at the moment that he entered the apartment, to do anything other than to begin to carry out his assigned task—as he was entitled to do.

The facts of this case are in stark contrast to other cases involving the crime of breaking and entering with the intent to commit larceny in which this Court has held that there was sufficient evidence of a defendant's criminal intent. See State v. Guerra, 12 A.3d 759, 767 (R.I. 2011); State v. McLaughlin, 621 A.2d 170, 178 (R.I. 1993); State v. Lamoureaux, 558 A.2d 951, 954 (R.I. 1989); State v. Johnson, 116 R.I. 449, 455, 358 A.2d 370, 374 (1976). In each of the just-referenced cases, the defendant's entry into the space at issue took place in the absence of the defendant's having the right to enter said space. See Guerra, 12 A.3d at 761 (noting that a witness saw the defendant exiting a building which he had had no right to enter); McLaughlin, 621 A.2d at 178 (noting the fact that the defendant had entered a house that he had no right to enter and did so through a cellar window); Lamoureaux, 558 A.2d at 954 (noting that the defendant's entry into the building in question was "unauthorized"); Johnson, 116 R.I. at 455, 358 A.2d at 374 (noting that the "defendant's aborted illicit nighttime breaking and entering into [a] teacher's apartment warrant[ed] the inference that he was there to steal something"). By

contrast, in the instant case, it is uncontested that defendant had the right (indeed, the duty) to enter the apartment for the purpose of carrying out his assigned tasks.

Furthermore, in <u>McLaughlin</u>, 621 A.2d at 178, the Court specifically alluded to the fact that the defendant committed the act of larceny within minutes of entering the house in question in reaching its determination that there was sufficient evidence of the intent of the defendant and, accordingly, denying the defendant's motion for judgment of acquittal. By contrast, in the instant case, the record is clear that defendant did not enter the bedroom until he had worked on the sliding door for about an hour. If he in fact had the intent of committing larceny at the point in time when he entered the apartment (which, I repeat, is the only crime with which he was charged), one wonders why he waited so long before carrying out his larcenous plan.

Additionally, this Court has previously found that acts committed prior to a defendant's entry can be indicative of a defendant's intent upon entry. <u>See</u> <u>Lamoureaux</u>, 558 A.2d at 953, 954 (noting the fact that the defendant had admitted inquiring about a business's plans with respect to an impending hurricane so as to learn whether anyone "would be present in the building," in determining that there was sufficient evidence in the record to warrant denial of the defendant's motion for judgment of acquittal). However, in the instant case, there is no evidence whatsoever of the defendant having committed any act or having uttered any word prior to entering the apartment that would indicate that he had the intent to commit larceny upon entering.

For these reasons, I respectfully dissent from the opinion of the Court upholding the trial justice's denial of the motion for judgment of acquittal.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:** State v. John Benoit.

**CASE NO:** No. 2014-354-C.A.
(K2/13-467A)

**COURT:** Supreme Court

**DATE OPINION FILED:** June 1, 2016

**JUSTICES:** Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:** Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:** Kent County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Allen P. Rubine

**ATTORNEYS ON APPEAL:**

For State: Christopher R. Bush
Department of Attorney General

For Defendant: Lara E. Montecalvo
Office of the Public Defender