George M. LEVESQUE, Jr.

v.

**RHODE ISLAND DEPARTMENT OF TRANSPORTATION.**

No. 92–364–M.P.

Supreme Court of Rhode Island.

June 29, 1993.

Kenneth R. Tremblay, Portsmouth, for plaintiff.

Jeffrey Pine, Atty. Gen., John E. Sullivan, III, Sp. Asst. Atty. Gen., for defendant.

## OPINION

SHEA, Justice.

This case is before the court on the Rhode Island Department of Transporta-

tion's petition for certiorari to review an order of the District Court in which the judge had vacated the finding of violation by the Administrative Adjudication Division.

On August 10, 1991, George M. Levesque, Jr. (Levesque), was arrested and charged by the Portsmouth police with refusal to submit to a chemical test upon the suspicion of operating a motor vehicle under the influence of alcohol.[1] The police informed him of his rights as they are enumerated in the Rights for Use at Station form that had been designed through a combined effort of the Department of Health, the Department of Transportation (DOT), and the Attorney General's office and which was distributed to all local police departments. This form outlines an individual's rights upon being stopped for drunk driving. The form contained the following warning:

"You do not have to submit to a chemical test at my request. If you refuse, none shall be given. However, a report will then be sent to an Administrative Law Judge of the Administrative Adjudication Division. Your driver's license will be immediately suspended and *after hearing* the following mandatory sanctions will be imposed if the charge is sustained: * * * (5) Violators will be required to maintain proof of financial responsibility for three (3) years." (Emphasis added.)

Despite this warning the driver persisted in his refusal to submit to the breathalyzer test.

After this incident Levesque received an order, dated August 26, 1991, from the DOT Administrative Adjudication Division (AAD) that called for suspension of his driver's license effective August 30, 1991. Attached to this order was a document entitled "Important Message" that notified him that all Rhode Island automobile registrations in his name were also suspended as of the effective date of his license suspension. The notice stated that he was required to surrender all license plates and that this suspension would be effective until such time as he filed proof of financial responsibility for the future.

The case was heard before an AAD judge on March 31, 1992, and the judge sustained the violation and imposed the minimum sanctions. Thereafter, Levesque appealed to the AAD appeals board, claiming that he had not received adequate notice of the possible penalties for refusing the test. His appeal was denied. Finally Levesque appealed to the Rhode Island District Court. After a hearing, the District Court judge reversed the appeals board decision and dismissed the violation against Levesque, finding that the suspension of a driver's registration is a penalty about which the driver must be informed pursuant to G.L.1956 (1982 Reenactment) § 31–27–2.1, as amended by P.L.1990, ch. 329, § 1, prior to his refusal to submit to a chemical test. The DOT then filed a petition for a writ of certiorari, which we granted.

Section 31–27–2.1 requires motor-vehicle operators who are suspected of driving under the influence of alcohol or drugs to submit to breath, blood, or urine analysis. This statute makes it an administrative violation to refuse to submit to these tests. However, before being required to undergo such a test, a suspected drunk driver must be informed of his or her right to be examined by a physician of his or her choice and of the penalties he or she could incur "as a result of noncompliance with [that] section." Section 31–27–2.1(a). It is undisputed that Levesque was not informed of the possibility that his motor-vehicle registrations could be suspended without the benefit of a hearing, as a result of his refusal to submit to a breathalyzer test. Levesque successfully argued in the District Court that the potential loss of his automobile

---

1. General Laws 1956 (1982 Reenactment) § 31–27–2.1, as amended by P.L.1990, ch. 329, § 1, is Rhode Island's implied-consent statute. Under this law operators of motor vehicles within the state are deemed to have given consent to chemical tests of their blood, breath, urine, or other body fluids in order to determine whether they are under the influence of alcohol or a controlled substance. The law also provides for certain mandatory penalties in the event the motorist refuses to submit to the required test.

registrations was a "penalty" about which he should have been informed pursuant to § 31–27–2.1(a) before he decided to refuse to submit to the chemical test. On appeal DOT contends that because possible loss of registration is not specifically listed as a penalty in § 31–27–2.1 and because the mere possibility of its loss cannot be considered to be a "penalty," the police cannot be required to inform suspected drunk drivers of this result.

■ The first issue we address is whether the possible suspension of a driver's registration, pursuant to G.L.1956 (1982 Reenactment) § 31–32–4, as amended by P.L.1988, ch. 377, § 1, upon the suspension of his or her license for refusal to submit to a chemical test for the presence of drugs or alcohol is a "penalty" about which the driver must be informed prior to his or her refusal. A penalty involves punishment of some sort and can be either civil or criminal in nature.[2]

Section 31–27–2.1(b) requires the AAD judge to impose all the sanctions contained in § 31–27–2.1 when a driver refuses to submit to a breathalyzer test if the judge finds that the driver was informed of all the penalties that he or she could incur as a result of his or her refusal. The DOT argues that because drivers who have refused chemical tests can avoid possible suspension of their registrations by having insurance, posting financial responsibility, or transferring registrations to other persons, the statute is conditional and therefore not penal. It also argues that because the purpose of suspending a person's registration is remedial, namely, to avoid accidents wherein the party at fault is unable to bear the financial responsibility for his or her accident, it cannot be considered to be penal.

In this case the driver received an order dated August 26 informing him that his registrations would be suspended as of August 30. He had no opportunity to demonstrate financial responsibility prior to the suspension of his automobile registrations. Therefore, this action by the registry must be considered to be a penalty. Additionally, in Rhode Island at the time of Levesque's arrest, owners of automobiles were not required to maintain liability insurance in order to register their cars. Therefore, a requirement of proof of insurance, or other demonstration of financial responsibility, in the limited circumstances provided for in § 31–32–4, in order to avoid the revocation of an automobile registration, is a penalty.

■ We next address the issue of whether the police must inform a suspected drunk driver of the possible penalty of loss of his or her registration because of his or her refusal to submit to a chemical test. We find that they must.

Section 31–27–2.1 imposes several penalties upon persons who refuse to submit to chemical tests after being arrested for operating a motor vehicle while under the influence of alcohol or controlled substances. The statute directs the AAD commissioner to impose these sanctions upon a finding "that the person had been *informed of the penalties incurred as a result of noncompliance with this section,* and that the person has refused to submit to the tests upon the request of a law enforcement officer." (Emphasis added.) Section 31–27–2.1(a). The question of whether they are to be imposed is not left to the commissioner's discretion but is mandatory in all cases. License suspension is a penalty in all such cases. This suspension occurs prior to a hearing, and thereafter the motorist is to be given a hearing as soon as possible. Because license suspension is a necessary penalty for refusal to submit to a breathalyzer test, § 31–32–4 is automatically triggered and the motorist's registration could thereby be suspended. The DOT argues that the language of § 31–27–2.1(a) demonstrates a legislative intent that the police officer only be required to inform a defendant of the penal-

---

**2.** Black's Law Dictionary describes the word "penalty" as "[a]n elastic term with many different shades of meaning; it involves idea of punishment, corporeal or pecuniary, or civil or criminal, although its meaning is generally confined to pecuniary punishment." Black's Law Dictionary, 1020 (5th ed.1979).

ties specifically enumerated in the statute. We disagree.

By its language § 31–27–2.1(a) does not limit a motorist's right to be informed of possible penalties only to those mentioned in its text. Because the statute is clear and unambiguous on its face, "we must give the words of the statute their plain and obvious meaning." *St. Pierre v. Fulflex, Inc.,* 493 A.2d 817, 818 (R.I.1985) (quoting *State v. Calise,* 478 A.2d 198, 200 (R.I.1984)). Therefore, we find that the police are required to inform motorists who have been arrested for driving under the influence of alcohol or controlled substances of all the penalties they could incur if they refuse to submit to breathalyzer tests, including the possibility that their registrations will be suspended.

■ This case also raises the issue of whether the registry's practice of suspending motorists' registrations upon the suspension of their licenses, without their having had the opportunity to show proof of financial responsibility, is permitted under law. When a motorist's license is suspended pursuant to § 31–27–2.1, § 31–32–4 is automatically triggered. That statute allows the registry to suspend the registration of motorists whose licenses are suspended or revoked. Under § 31–32–4(C)(2),

"[w]henever the license of any person shall have been suspended for having violated any provisions of the motor vehicle laws other than those enumerated in § 31–11–6, once (1) within a period of twenty-four (24) calendar months the registrar may in his or her discretion require such person to maintain proof of financial responsibility for the future with respect to all vehicles registered by such person as the owner."

A careful reading of §§ 31–32–4(C)(2) and 31–32–4(D) discloses that nothing in that statute gives the registry the power to summarily suspend the registrations of motorists whose licenses have been suspended under § 31–27–2.1 without first offering them the opportunity to furnish proof of financial responsibility.

■ We now hold, therefore, that suspension of motorists' registrations without first offering them the opportunity of hearings is violative of their due-process rights. It is clear that the due-process clause of the Fourteenth Amendment, which requires notice and the opportunity to be heard before a person can be deprived of a property right, applies to the suspension or revocation of a driver's license. "Suspension of issued licenses involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment." *Dixon v. Love,* 431 U.S. 105, 112, 97 S.Ct. 1723, 1727, 52 L.Ed.2d 172, 180 (1977) (quoting *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971)). The United States Supreme Court has also held, however, that it does not violate a person's due-process right to revoke his or her license to operate a motor vehicle without a preliminary hearing when the motorist has demonstrated a lack of ability to exercise due care or a lack of respect for the traffic laws as long as a post-suspension hearing is readily available. *Dixon v. Love,* 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977). Similarly this court has held previously that summary suspension of a driver's license for refusal to submit to a breathalyzer test is not a violation of due process. *State v. Locke,* 418 A.2d 843 (R.I.1980). In the case of a driver's license "[t]he state's compelling interest in highway safety justifies the procedure of imposing summary suspension, effective pending the outcome of the promptly available postsuspension hearing, on those who refuse to consent to a test of this type." *Id.* at 850.

However, we are of the opinion that the exigency that exists with a driver's license that can justify summary suspension does not exist with respect to a motor-vehicle registration. The state's interest in the case of a license is in keeping suspected drunk drivers off the roads. A registration merely permits a person to own an automobile that may be operated within the state either by the owner or by another party. Having an automobile registration does not entitle the owner to operate a motor vehicle

but merely entitles him or her to own the car and to allow the car to be operated, even by another person. Permitting a person who may have committed a motor-vehicle violation to maintain an automobile registration does not create a dangerous situation, thereby triggering the state's interest in keeping its highways safe. The state may not therefore summarily suspend the registrations of persons whose licenses have been suspended under § 31–27–2.1.

■ However, the District Court action of vacating the violation was too broad. The District Court was correct in voiding the registration suspension because it is a consequence of which Levesque was not informed. But since the driver was adequately informed of the other penalties he could incur because of his failure to submit to the breathalyzer test, those penalties and the violation should have been affirmed.

For the foregoing reasons the writ of certiorari is granted in part and denied in part. The order vacating the violation for refusal to submit to the breathalyzer test is quashed, the order vacating the suspension of the registrations is affirmed, and the papers of the case are remanded to the District Court with our decision endorsed thereon for entry of a new judgment consistent with this opinion.

LEDERBERG, J., did not participate.