**STATE**

v.

**David ROBINSON.**

**State**

v.

**Robert Palmer, Jr.**

**State**

v.

**Christine Cabral.**

**State**

v.

**Marcos Garden.**

**State**

v.

**John Barboza.**

**State**

v.

**Armando Furlano.**

Nos. 2007–197–M.P., 2007–198–M.P., 2007–204–M.P., 2007–296–M.P., 2008–28–M.P. and 2008–116–M.P.

Supreme Court of Rhode Island.

June 10, 2009.

John E. Sullivan, III, Department of Attorney General, for Plaintiff.

Richard S. Humphrey, Esq., Tiverton, Andrew Horwitz, Esq., Pawtucket, Steven G. Wright, Esq.; Russell Bramley, Esq., Warwick; B. Jean Rosiello, Esq., for Defendant.

Present: GOLDBERG, Acting C.J., FLAHERTY, SUTTELL, and WILLIAMS, C.J. (ret.).

## O P I N I O N

Justice FLAHERTY, for the Court.

The facts before us are straightforward and uncomplicated. These companion cases are before the Supreme Court on writs of certiorari. The petitioners are six motorists who are seeking review of a District Court order. That order reversed a decision of the appeals panel of the Traffic Tribunal that had affirmed a magistrate judge's dismissal of charges for refusing to submit to a chemical test. This Court issued the writs and consolidated the cases for briefing and argument because of the parallel issues presented. The petitioners have diverse backgrounds, come from different communities across our state, are of various ages and ethnicities, and in all likelihood have never met each other.[1] They do, however, share certain common denominators; all six were suspected of operating motor vehicles while under the influence of alcohol or a controlled substance, all six were advised of the penalties for refusing to submit to a chemical test save one—a $200 assessment fee to support the Department of Health's chemical testing programs—and, all six declined to have the test administered to them. What we are called upon to resolve is the impact of that single omission. Because we conclude that the District Court lacked jurisdiction to hear the state's appeal from the decision of the appeals panel, we quash the order of the District Court.

## I

### The Refusal Statute, G.L. 1956 § 31–27–2.1

General Laws 1956 § 31–27–2.1(a) provides that operators of motor vehicles within the state are presumed to have consented to chemical tests of their blood, breath, and/or urine to determine whether they are under the influence of alcohol or a controlled substance. Section 31–27–2.1(b) empowers law-enforcement officers to prepare a sworn report and submit it to a judge of the Traffic Tribunal or District Court whenever a motorist, arrested on suspicion of driving while intoxicated, refuses to submit to such a test. If the report satisfies the requirements set forth in subsection (b) of § 31–27–2.1,[2] the judge

---

1. Thirty-two motorists were named in the District Court action; however, only six of those motorists are before this Court.

2. The report must indicate that:
"[The] law enforcement officer * * * had reasonable grounds to believe the arrested person had been driving a motor vehicle

must immediately suspend the license of the driver to whom reference is made in the report. Thereafter, under subsection (c) of § 31–27–2.1, a hearing is available to determine whether a refusal charge should be sustained or dismissed. If the judge finds after the hearing that:

> "(1) the law enforcement officer making the sworn report had reasonable grounds to believe that the arrested person ·had been driving a motor vehicle within this state while under the influence ˙of intoxicating liquor, toluene, or any controlled substance, * * * (2) the person˙ while under arrest refused to submit to the tests upon the request of a law enforcement officer; (3) the person had been informed of his or her rights in accordance with § 31–27–3; and (4) *the person had been informed of the penalties incurred as a result of noncompliance with this section; the judge shall sustain the violation.*" Section 31–27–2.1(c) (emphasis added).

In such a case, the judge "shall then impose the penalties set forth in subsection (b)." *Id.* One such penalty is the $200

assessment of which petitioners were not informed and which is the focus of our attention in this case.[3]

## II

### ·Facts and Travel

A Warwick police officer arrested Christine Cabral,[4] on September 10, 2006, because he suspected that she was operating . a motor vehicle while intoxicated. At the police station, an officer asked her to submit to a chemical test, and read to her from a form entitled "Rights for Use at the Station/Hospital." That form indicated that the motorist had the option to refuse the test and notified her about the penalties she would incur in the event she refused.[5] The state concedes that the form used by law enforcement in Ms. Cabral's case, and in the cases of the other petitioners, did not include any information about the $200 assessment that recently had been enacted, and that the motorists were not informed of this penalty.[6] Cabral refused to submit to the test, and, as a result, she was cited for her refusal pursuant to § 31–27–2.1.

---

within this state under the influence ˙of intoxicating liquor, toluene, or any controlled substance, as defined in chapter 28 of title 21, or any combination of these; that the person had been informed of his or her rights in accordance with § 31–27–3; that the person had been informed of the penalties incurred as a result of noncompliance with this section; and that the person had refused to submit to the tests upon the request of a law enforcement officer * * *." G.L. 1956 § 31–27–2.1(b).

3. Section 31–27–2.1(b)(6) provides that:

> "In addition to any other fines and highway safety assessments, a two hundred dollar ($200) assessment shall be paid by any person found in violation of this section to support the department of health's chemical testing programs outlined in § 31–27–2(4), which shall be deposited as general . revenues, not restricted receipts."

4. Because the circumstances of each ˙of the six consolidated cases before us are similar, we will recite the facts and travel of one case, *State v. Cabral,* No. 2007–204–M.P., for the purpose of illustration.

5. The form is distributed to all local police departments throughout the state, and originally was "designed through a combined effort· of the Department of Health, the Department of Transportation (DOT), and the Attorney General's office." *Levesque v. Rhode Island Department of Transportation,* 626 A.2d 1286, 1288 (R.I.1993).

6. The refusal statute was amended effective July 1, 2006, to include the $200 assessment. P.L. 2006, ch. 246, art. 10, § 1. The law-enforcement community had not yet updated ˙its forms to reflect the new law at the time that the police arrested Ms. Cabral and the other motorists in˙ this case. ˙

On September 22, 2006, Cabral appeared *pro se* in the Traffic Tribunal and denied the charge. A judge then issued a preliminary suspension of her driver's license and scheduled a trial. On October 19, 2006, however, a magistrate judge of the Traffic Tribunal dismissed the refusal charge after he found that Cabral had not been fully apprised of the penalties that she would incur as a consequence of her refusal to submit to the chemical test.

The state appealed the magistrate judge's decision to the appeals panel of the Traffic Tribunal. On January 29, 2007, the panel issued a consolidated decision that affirmed the magistrate's decision to dismiss the charges against Cabral and the other motorists. It found that the $200 assessment was a penalty within the meaning of the refusal statute and that the imposition of this penalty was mandatory. The panel said that it lacked the statutory authority to impose some of the mandatory penalties, but not others, and that if it decided "to avoid the $200 statutory penalty and impose the other sanctions, [its] action would be *void ab initio*." The panel concluded that:

> "Appellees were not informed of all the penalties under Sec. 31–27–2.1 before refusing to submit to a chemical test, and the failure to inform them of a mandatory penalty is a violation of the statute. Without knowledge of all mandatory penalties before them, this motorist could not knowingly refuse within the meaning of Sec. 31–27–2.1. This Panel finds that the failure to inform motorists of a mandatory assessment effectively repudiates the validity of the motorists' refusal."

On February 7, 2007, the state filed a document entitled "Complaint" in the Traffic Tribunal that purported to give notice that it was seeking review of the appeals panel's decision in the District Court. Noticeably absent from that document was any reference to statutory authority providing the District Court with jurisdiction to hear the state's appeal. In Cabral's answer to the state's complaint, she contended that the District Court did not have subject-matter jurisdiction because G.L. 1956 § 31–41.1–9(a) only authorizes "[a] person who is aggrieved" by a decision of the appeals panel to appeal to the District Court. She asserted that the state is not a "person" within the definition of the statute. In a consolidated decision issued on May 23, 2007, a District Court judge reversed the decision of the appeals panel. He did not specifically rule on the jurisdictional issue, but simply cited § 31–41.1–9 as the vehicle for the state's appeal and as the basis for the court's jurisdiction. The judge reviewed the refusal statute and relied on this Court's decision in *Levesque v. Rhode Island Department of Transportation*, 626 A.2d 1286 (R.I.1993), to reach his decision.

In *Levesque*, 626 A.2d at 1288, the police arrested a motorist and charged him with refusing to submit to a chemical test after he was suspected of driving while intoxicated. Consequently, the Administrative Adjudication Division (AAD) of the Rhode Island Department of Transportation (DOT) issued an order suspending both his license and automobile registrations. *Id.* An AAD judge sustained the violation, and the motorist appealed to the AAD appeals board, which denied his appeal.[7] *Id.* Levesque appealed to the District Court. *Id.*

---

7. In 1992, the General Assembly replaced the AAD with the Administrative Adjudication Court (AAC). *See* P.L. 1992, ch. 453, §§ 1, 3. Seven years later, the Traffic Tribunal succeeded the AAC. *See* G.L. 1956 § 8–8.2–1, as enacted by P.L. 1999, ch. 218, art. 4, § 1 (establishing Traffic Tribunal).

After a hearing, the District Court judge dismissed the violation against the motorist, finding that the suspension of his registration was a penalty about which the motorist must be informed pursuant to § 31–27–2.1. *Levesque*, 626 A.2d at 1288. We granted the DOT's petition for a writ of certiorari. *Id.* Before this Court, the motorist contended that he had not been warned that his registrations might be suspended before he refused to take the test. *Id.* at 1288–89. We held that "the police are required to inform motorists who have been arrested for driving under the influence of alcohol or controlled substances of all the penalties they could incur if they refuse to submit to breathalyzer tests * * *." *Id.* at 1290. The Court went on to say that although the suspension of the motorist's registration without first providing him the opportunity for a hearing was a denial of his due process rights, vacating the violation was too broad a remedy. *Id.* at 1290–91. The Court reasoned that the "District Court was correct in voiding the registration suspension because it is a consequence of which Levesque was not informed." *Id.* at 1291. "But since the driver was adequately informed of the other penalties he could incur because of his failure to submit to the breathalyzer test, those penalties and the violation should have been affirmed." *Id.*

The District Court judge in the instant matter found that *Levesque* controlled the outcome of this case. He concluded that, similar to the motorist in *Levesque*, petitioners' "statutory right to be notified of all refusal penalties was violated." The judge, however, did not agree with the appeals panel's decision that the violation must be dismissed. Instead, he said that:

"[T]he panel's concern that to eliminate the $200 assessment would run afoul of the mandatory penalty provision is fundamentally misguided. The panel's decision has the following anomalous result: concluding that one penalty cannot be waived, they would in essence, waive all—the fine, the license suspension, the infirmities that result from the enhancement of a future conviction. This is killing a statute with kindness. It is throwing out the baby with the bath water. It deems one provision so inviolate that all others are negated. Accordingly, this Court cannot agree with the panel's reasoning."

As a result, the judge remanded the case to the Traffic Tribunal with instructions to reinstate the charges against Ms. Cabral and the other motorists. He said that if the motorists later were adjudicated to have refused to submit to a chemical test, the $200 penalty could not be imposed. An order was entered on May 23, 2007; on September 10, 2007, we granted Ms. Cabral's petition for certiorari and her petition for a stay of all the Traffic Tribunal proceedings.

### III

### Issues Presented

The petitioners raise two arguments before this Court. First, they assert that because the state concedes that the $200 assessment is a penalty about which petitioners were required to be informed, the state's inability to prove that each of these motorists was so informed requires that the charges be dismissed. They argue that the penalties set forth in the statute are mandatory and that none can be suspended. The petitioners contend that dismissal is the only option when a law-enforcement officer fails to inform a motorist of all the consequences of refusal. In an attempt to distinguish the instant case from *Levesque*, petitioners maintain that in that case, the penalty about which the motorist was not informed—the potential loss of his automobile registrations—did

not arise from the refusal statute, but instead was found in another statute, G.L. 1956 § 31–32–4. Therefore, they argue, the Court had the discretion to suspend the penalty. More specifically, petitioners assert that *Levesque* does not address whether a mandatory penalty such as the one contained in the refusal statute can be suspended.

The state responds that the District Court properly reversed the appeals panel's decision. It asks this Court to affirm the District Court decision because, it argues, *Levesque* is controlling of the issues in this case. It is the state's contention that the fact that the registration suspension under § 31–32–4 was only a possible consequence of the motorist's refusal in *Levesque* is irrelevant. Instead, the state suggests that when one penalty cannot be imposed because of a failure to notify, the charge should not be dismissed, but rather the remaining penalties, when notice is not an issue, should be imposed and the charge sustained.

The petitioners' second argument is that the District Court lacked subject-matter jurisdiction over the case. That court presumed to have jurisdiction to entertain the state's appeal under § 31–41.1–9(a), which provides that "[a]ny *person* who is aggrieved by a determination of an appeals panel may appeal the determination" to the District Court. (Emphasis added.) We note that "person" is a defined term for purposes of title 31 of the General Laws, encompassing "every individual, firm, partnership, corporation, or association." G.L. 1956 § 31–1–17(g). The peti-

tioners point out that terms such as the "state," the "government," a "public body," or a "state or governmental agency" are "conspicuously absent from that definition."[8] They argue that because the state is not a "person" as that term is defined in the statute and because no other statutory provisions establish jurisdiction in the District Court to hear the state's appeal, the District Court acted without subject-matter jurisdiction.

The state counters by pointing out that the General Assembly has provided the chief magistrate of the Traffic Tribunal with "the power to make rules for regulating practice, procedure and business within the [T]raffic [T]ribunal." G.L. 1956 § 8–8.2–1(a). The state contends that one such rule—Rule 21 of the Traffic Tribunal Rules of Procedure, entitled "Appeals from decisions in civil traffic violations"—provides the District Court with subject-matter jurisdiction to entertain the state's appeal. Subsection (b) of Rule 21 provides in pertinent part that:

> "Any *party* aggrieved by a decision of the appeals panel may appeal therefrom to the [S]ixth [D]ivision [D]istrict [C]ourt. Appeal may be claimed by filing a written notice of appeal on a form prescribed by the chief judge and, in the case of a defendant, by submitting the appeal filing fee of twenty-five dollars ($25.00). The filing fee is waived when an appeal is taken by the state, the municipality or other prosecuting authority." (Emphasis added.)

---

8. The petitioners also point out that there are at least two dozen statutes in which the General Assembly has expressly included the state within the definition of a "person." *See, e.g.,* G.L. 1956 §§ 4–3–1(3); 5–37–1(12); 21–4.1–2(8). Furthermore, there are a number of other statutes in which while the state has not been included in the definition of a person, but in which the terms "government," "governmental unit," "governmental body," "government agency," or "state agency" have been included within the definition of a "person." *See, e.g.,* G.L. 1956 §§ 5–19.1–2(p), 17–25.2–3(8), 3–14–3(g), § 23–19.6–4(2), 23–23–3(7).

The state also points out that the General Assembly recently amended § 8–8.2–2 by adding subsection (d), which provides that "[a] party aggrieved by a final order of the [T]raffic [T]ribunal appeals panel shall be entitled to a review of the order by a judge of the [D]istrict [C]ourt." P.L. 2008, ch. 1, § 4. The state argues that the codification of this amendment is further evidence of the General Assembly's intent to preserve the state's right of appeal. Therefore, the state urges us to hold that the District Court was vested with the authority to rule on its appeal.

## IV

### Standard of Review

■■■ "[T]his Court's review on writ of certiorari is limited 'to examining the record to determine if an error of law has been committed.'" *Crowe Countryside Realty Associates Co., LLC v. Novare Engineers, Inc.,* 891 A.2d 838, 840 (R.I.2006) (quoting *State v. Santiago,* 799 A.2d 285, 287 (R.I.2002)). "Questions of law * * * are not binding upon the court and may be reviewed to determine what the law is and its applicability to the facts." *State v. Faria,* 947 A.2d 863, 867 (R.I.2008) (quoting *Hometown Properties, Inc. v. Rhode Island Department of Environmental Management,* 592 A.2d 841, 843 (R.I. 1991)). "We reverse only when we find pursuant to the petition that the lower-court judge committed an error of law." *Id.* (quoting *Boucher v. McGovern,* 639 A.2d 1369, 1373 (R.I.1994)).

## V

### Analysis

■■■ Before we reach the merits of petitioners' first argument—that the charges must be dismissed because they were not informed of a penalty incurred as a result of refusal—the basis of the Dis-

trict Court's jurisdiction must be at the forefront of our consideration. This is so because "subject-matter jurisdiction is 'an indispensable requisite in any judicial proceeding.'" *Newman v. Valleywood Associates, Inc.,* 874 A.2d 1286, 1288 (R.I.2005) (quoting *Zarrella v. Minnesota Mutual Life Insurance Co.,* 824 A.2d 1249, 1256 (R.I.2003)). "This Court reviews *de novo* whether a court has subject-matter jurisdiction over a particular · controversy." *Tyre v. Swain,* 946 A.2d 1189, 1197 (R.I. 2008) (citing *Newman,* 874 A.2d at 1288).

Article 10, section 1, of the Rhode Island Constitution provides that "[t]he judicial power of this state shall be vested in one supreme court, and in such inferior courts as the general assembly may, from time to time, ordain and establish." Section 2 of article 10 provides that "[t]he inferior courts shall have such jurisdiction as may, from time to time, be prescribed by law." "We have broadly construed the authority of the General Assembly under this article of our constitution to enact legislation dictating the jurisdiction of the lower courts." *State v. Byrnes,* 456 A.2d 742, 744 (R.I. 1983); *see, e.g., State v. Almonte,* 644 A.2d 295, 300 (R.I.1994) (state constitution "grants to the Legislature the authority to establish and prescribe the jurisdiction of any inferior courts"); *McCarthy v. Johnson,* 574 A.2d 1229, 1232 (R.I.1990) ("It cannot be disputed that the General Assembly has the power to confer jurisdiction upon the courts under our constitution"). Therefore, the fundamental question that we first must resolve is whether the General Assembly vested the District Court with jurisdiction to hear an appeal by the state from a decision by the appeals panel of the Traffic Tribunal.

■■■ We conclude that such jurisdiction does not spring from the language of § 31–41.1–9. "When construing statutes, this Court's role is 'to determine and effec-

tuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes.'" *Such v. State,* 950 A.2d 1150, 1155–56 (R.I.2008) (quoting *Brennan v. Kirby,* 529 A.2d 633, 637 (R.I.1987)). "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Id.* (quoting *Moore v. Ballard,* 914 A.2d 487, 490 (R.I.2007)). Applying this principle to the case *sub judice,* it is clear that the statute in force at the applicable time did not provide the state with a vehicle to appeal to the District Court because the definition of a "person" within title 31 does not include the state.

■ Having so held, we now turn our attention to the state's argument that the District Court had jurisdiction under Rule 21(b). "It is well established that in situations in which a statute and a rule approved by the Rhode Island Supreme Court are in conflict, the court rule prevails." *Tonetti Enterprises, LLC v. Mendon Road Leasing Corp.,* 943 A.2d 1063, 1071 (R.I.2008) (quoting *Heal v. Heal,* 762 A.2d 463, 467 (R.I.2000)); *see* G.L. 1956 § 8–6–2(a) ("The rules of the [S]uperior, [F]amily, [D]istrict [C]ourt and the [T]raffic [T]ribunal shall be subject to the approval of the [S]upreme [C]ourt. Such rules, when effective, shall supersede any statutory regulation in conflict therewith."). In this case, we are faced with a clear conflict: Rule 21(b) provides that "[a]ny *party* aggrieved by a decision of the appeals panel may appeal," to the District Court, while § 31–41.1–9(a) provides that "any *person* who is aggrieved by a determination of an appeals panel may appeal" to the District Court. (Emphases added.)

■ We cannot overlook the well-established principle that procedural rule-making authority may not be used to expand a court's jurisdiction. The United States Supreme Court has said:

"An authority conferred upon a court to make rules of procedure for the exercise of its jurisdiction is not an authority to enlarge that jurisdiction; and the Act * * * authorizing this Court to prescribe rules of procedure in civil actions gave it no authority to modify, abridge or enlarge the substantive rights of litigants or to enlarge or diminish the jurisdiction of federal courts." *United States v. Sherwood,* 312 U.S. 584, 589–90, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *see also* Fed.R.Civ.P. 82 (federal rules must not be construed to extend or limit jurisdiction).[9]

There is no dispute that § 8–6–2(a) enables the various courts of this state to promulgate rules regulating the "practice, procedure, and business therein." The statute provides that the rules shall have as their goal a simplified system of "pleading, practice, and procedure" that will promote a "speedy determination of litigation on the merits." Section 8–6–2(b). In the case of the Traffic Tribunal, the General Assembly clearly has provided that the chief magistrate can enact rules to regulate the practice, procedure, and business within that tribunal. Sections 8–6–2, 8–8.2–1. But that does not end our inquiry. If the Traffic Tribunal cannot use its rules to expand its own jurisdiction, it certainly cannot use them to expand the District Court's jurisdiction.

■ In *Dyer v. Keefe,* 97 R.I. 418, 423, 198 A.2d 159, 162 (1964), this Court said that rule-making power "must be confined to regulating the pleading, practice and

---

9. Similarly, Rule 82 of the Superior Court Rules of Civil Procedure provides that such rules "shall not be construed to extend or limit jurisdiction of the Superior Court."

procedure therein" and that it could not "be extended to categories not reasonably comprehended by those terms." *But see Letendre v. Rhode Island Hospital Trust Co.*, 74 R.I. 276, 281–82, 60 A.2d 471, 474 (1948). A rule of the Traffic Tribunal that creates jurisdiction in the District Court to entertain an appeal, in the absence of statutory authorization, is precisely the type of expansion of power that this Court held to be improper in *Dyer. See Dyer*, 97 R.I. at 423, 198 A.2d at 162 (holding that rule requiring a party filing a pleading, motion, or any other paper, to furnish a copy to other party did not require a defendant to provide the plaintiff with a notice of her claim of a jury trial because such a right is not related to pleading, practice, and procedure, and is outside the scope of the Superior Court's rule-making power). The chief magistrate simply does not have the authority to promulgate a rule that expands the jurisdiction of the District Court because that is a right that lies solely within the province of the General Assembly.[10] Rule-making power allows courts to govern their internal matters; it does not allow a court to promulgate a rule that intrudes upon substantive legislative matters such as the expansion of the jurisdiction of the District Court.

## V

### Conclusion

Therefore, we hold that the District Court did not have subject-matter jurisdic-

tion to hear the state's appeal.[11] Consequently, we quash the order entered by the District Court, to which we return the record.

Justice ROBINSON did not participate.

10. We note that the General Assembly subsequently conferred such jurisdiction through the addition of § 8–8.2–2(d), which provides that a party aggrieved by a final order of the appeals panel may appeal to the District Court. However, at the time that the District Court heard this case, that provision had not been enacted. We are not persuaded by the state's argument that this new provision evidenced a prior intent on behalf of the General Assembly to provide the state with a vehicle to

appeal an adverse decision from the appeals panel to the District Court. The simple fact of the matter is that when the court heard the state's appeal, it lacked subject-matter jurisdiction to do so.

11. Because we have decided this case on jurisdictional grounds, we need not, and we do not, reach the other issues raised by the parties.