**STATE**

**v.**

**Richard TOWER.**

**State**

**v.**

**Richard Tower.**

**Nos. 2008–297–C.A., 2008–298–C.A.**

Supreme Court of Rhode Island.

Dec. 7, 2009.

---

Lauren S. Zurier, Department of Attorney General, for Plaintiff.

Janice M. Weisfeld, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J.,
GOLDBERG, FLAHERTY, ROBINSON,
JJ., and WILLIAMS, C.J. (ret.).

## OPINION

Justice FLAHERTY, for the Court.

The defendant, Richard Tower, appeals from convictions on two counts of violating a no-contact order and one count of simple assault. The parties appeared for oral argument on October 6, 2009, pursuant to an order of this Court ordering them to show cause why the issues raised in this appeal should not summarily be decided without further briefing or argument. After considering the record, the memoranda submitted by the parties, and the oral arguments advanced by each, we are of the opinion that cause has not been shown and that the case should be decided at this time. For the reasons set forth below, we affirm the Superior Court's judgments of conviction.

## I

### Facts and Travel

On December 14, 1999, defendant Richard Tower, after having pled *nolo contendere* to a charge of simple assault-domestic in criminal information P2/98–3396A, was sentenced to seven years at the Adult Correctional Institutions (ACI), with fifteen months to serve and sixty-nine months suspended, with a sixty-nine-month period of probation.[1] The sentencing justice also ordered defendant to have no contact with his former girlfriend, Maria Gois, said order to remain "in effect until expiration of sentence."

As a result of his presentence confinement and the good time credits that he earned while incarcerated, defendant completed his fifteen-month term of imprisonment on July 10, 2000. Upon release, he began his sixty-nine-month period of probation. However, on August 20, 2004, defendant was found to be a violator of probation. On September 23, 2004, the trial justice ordered him to serve six months of his sixty-nine-month suspended sentence; his suspended sentence and term of probation were reduced to sixty-three months.

On the night of October 29, 2006, Pawtucket police officers Jared Boudreault and Darren Lafreniere were dispatched to the third floor of a house at 74 Anthony Avenue because of a report of a disturbance. That address was the home of Maria Gois. When the officers reached the apartment, they saw defendant on the porch, speaking on a telephone. While Officer Boudreault remained inside the apartment, Officer Lafreniere walked out onto the porch and asked defendant to terminate his phone conversation. At first, defendant ignored the request and he swore at the officer. However, after about twenty seconds, defendant ended his conversation and proceeded to walk past Officer Lafreniere into the apartment.

Meanwhile, Officer Boudreault had positioned himself in front of the bedroom doorway because he had not searched that room, and he did not know if any weapons

1. The defendant was charged and convicted of violating G.L.1956 § 11–5–3 and G.L.1956 § 12–29–5, a felony based on two prior convictions for domestic assault.

were inside. As defendant walked toward the bedroom, Officer Boudreault informed him that he could not enter, but defendant attempted to push his way past Officer Boudreault by placing his shoulder into the officer's chest. Once defendant made physical contact with Officer Boudreault, both officers seized defendant and, after a brief struggle, they were able to restrain him in handcuffs. The officers then searched the rest of the apartment and spoke to Maria Gois, who identified defendant as her boyfriend.

Approximately one month thereafter, on November 28, 2006, Pawtucket Det. Sgt. Manny Maciel, who was aware of the no-contact order, went to 74 Anthony Avenue in Pawtucket to follow up with Maria Gois about the October 29 incident with defendant. When he arrived at the landing outside the third floor, Maciel saw defendant standing in the apartment doorway. Maciel asked to see Ms. Gois; after defendant told him she was inside, Maciel entered the apartment to talk to her. Maciel then called for additional police officers to assist him; and he arrested defendant.

On January 3, 2007, the state filed criminal information No. P2/06–4337A charging Richard Tower with four offenses. Count 1 alleged that on October 29, 2006, defendant committed a felony when he violated a no-contact order issued in case number P2/98–3396A, after having been previously convicted of two domestic offenses in violation of G.L.1956 § 12–29–4.[2] Count 2 charged defendant with disorderly con-

duct. Count 3 alleged that defendant committed a simple assault on Officer Boudreault. Count 4 alleged that defendant resisted arrest. The same day, criminal information No. P2/06–4296A charged that on November 28, 2006, defendant committed a separate felony when he violated the same Superior Court order that prohibited him from having contact with Maria Gois.[3]

At trial, Superior Court Clerk Dennis SaoBento testified that he had reviewed the P2/98–3396A case file and determined that on December 15, 1999, a trial justice of the Superior Court had entered an order prohibiting defendant from having any contact with Maria Gois for the entire length of his seven-year sentence on P2/98–3396A. Clerk SaoBento further testified that this order would not expire until 2009, sixty-three months from May 2004.

After the state completed its case, defendant moved for a judgment of acquittal on all charges based on Rule 29 of the Superior Court Rules of Criminal Procedure. The trial justice granted defendant's motion only on the counts of disorderly conduct and resisting arrest, but he denied the motion on the remaining two counts of violating the no-contact order and the one count of simple assault. The jury returned a guilty verdict on all three remaining counts. On January 16, 2008, the trial justice sentenced defendant to concurrent sentences of ten years on each violation of the no-contact order, with one year to serve at the ACI and a nine-year

2. The allegation that a no-contact order was violated is a felony, not a misdemeanor, because Tower's violation of a no-contact order occurred after he previously was convicted of two domestic offenses. *See* § 12–29–5(c)(1)(ii) (providing that "[e]very person convicted of an offense punishable as a misdemeanor involving domestic violence as defined in § 12–29–2 shall: (ii)[f]or a third and subsequent violation be deemed guilty of a felony"). Section 12–29–4(a)(3) provides that

"[w]illful violation of a court order issued under subdivision (1), (2), or as part of disposition of this subdivision of this subsection is a misdemeanor." Section 12–29–2(a)(10) includes violations of § 12–29–4 within the definition of domestic violence.

3. Information No. P2/06–4296A and information No. P2/06–4337A were consolidated for purposes of trial and appeal.

suspended sentence with nine years of probation. On the remaining simple assault count, the trial justice imposed a one-year suspended sentence and one year of probation, to be served concurrently with the nine-year suspended sentence, nine-year period of probation for the two no-contact order violations.

On appeal, defendant raises two arguments. First, defendant argues that the Superior Court lacked subject-matter jurisdiction to convict him for violating the no-contact order issued on P2/98–3396A because he contends that the sentence imposed on that case had expired. Second, defendant argues that the evidence introduced at trial was insufficient to convict him of simple assault. We affirm the judgments of conviction because we conclude that the Superior Court did have subject-matter jurisdiction over defendant's case and that defendant waived his right to appeal the denial of his motion for judgment of acquittal when he failed to renew his motion after presenting evidence on his own behalf.

## II

### A

### Superior Court's Jurisdiction

A party may raise the lack of subject-matter jurisdiction at any time during the course of the proceedings. *Pollard v. Acer Group.* 870 A.2d 429, 433 (R.I.2005) (citing *LaPetite Auberge, Inc. v. Rhode Island Commission for Human Rights.* 419 A.2d 274, 280 (R.I.1980)). In considering a challenge to a court's subject-matter jurisdiction, this Court reviews the lower court's determination on subject-matter jurisdiction *de novo. State v. Robinson,* 972 A.2d 150, 157 (R.I.2009) (citing *Tyre v. Swain,* 946 A.2d 1189, 1197 (R.I. 2008)).

"[S]ubject-matter jurisdiction is 'an indispensable requisite in any judicial proceeding.'" *Robinson,* 972 A.2d at 157 (quoting *Newman v. Valleywood Association's, Inc.,* 874 A.2d 1286, 1288 (R.I. 2005)). "Subject-matter jurisdiction hinges on the allegations in the complaint, rather than what the state can prove at trial. A complaint that properly sets forth the crime charged is sufficient" to invoke jurisdiction. *State v. DelBonis,* 862 A.2d 760, 764 (R.I.2004); *see also State v. Texieira,* 944 A.2d 132, 139 (R.I.2008) (rejecting argument that Superior Court lacked subject-matter jurisdiction over a murder case because G.L.1956 § 8–2–15 undoubtedly confers jurisdiction). We have held that the "[a]bsence of subject matter jurisdiction in the fundamental sense is an extreme determination when applied to a trial court of general jurisdiction." *State v. Souza,* 456 A.2d 775, 779 (R.I.1983) (citing *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872)).

Section 8–2–15 sets forth the criminal jurisdiction of the Superior Court. It says that "[t]he superior court shall have original jurisdiction of all crimes, offenses, and misdemeanors, except as otherwise provided by law." *Id.* This Court has held that "[t]he Superior Court is a court of general jurisdiction and may decide any controversy in which the state alleges the commission of a felonious crime or, indeed, any crime unless jurisdiction is conferred upon some other tribunal." *Souza,* 456 A.2d at 779 (citing § 8–2–15).

Tower argues that the Superior Court was not vested with subject-matter jurisdiction to try him for violating a no-contact order because the no-contact order issued on P2/98–3396A expired on April 10, 2006, not "sometime in 2009" as the Superior Court clerk testified. We disagree.

■■ The Superior Court has exclusive jurisdiction over both felony allegations and over misdemeanor allegations unless other courts are given jurisdiction by statute. *See* § 8–2–15. Information No. P2/06–4337A and information No. P2/06–4296A each charged defendant with committing a felony by violating a no-contact order with respect to Maria Gois. As we held in *DelBonis*, 862 A.2d at 764, "[s]ubject-matter jurisdiction hinges on the allegations in the complaint, rather than what the state can prove at trial." Similarly, the allegations contained in the state's informations determine whether the Superior Court has subject-matter jurisdiction over a case. Here, the allegations were sufficient to invoke the Superior Court's subject-matter jurisdiction because each information alleged that defendant committed a felony. The jury's determination as to the status of the no-contact order did not impact the issue of whether the Superior Court was cloaked with subject-matter jurisdiction to hear the action.

■ With respect to defendant's argument that he was wrongly convicted because the clerk testified inaccurately that the period of probation had not expired, we hold that this issue was waived. The validity of the no-contact order was a matter of proof at trial. The jury instructions required the jury to find that the state proved beyond a reasonable doubt that "a no contact order with Maria Gois was duly issued and in effect on the dates in question and that the defendant was aware of it."[4] The jury so found, based upon the uncontradicted testimony of the Superior Court clerk. The defense neither rebutted this testimony at trial nor preserved the issue for appeal.

## B
### Insufficient Evidence of Guilt for Simple Assault

■■ The defendant also contends that the evidence introduced at trial was insufficient to convict him of assaulting Officer Boudreault. In response, the state maintains that this issue is not properly before the Court because the defendant failed to renew his motion for judgment of acquittal at the close of all evidence, and thus did not preserve this issue for appeal.[5]

Before this Court will consider an appeal of a trial justice's denial of a Rule 29 motion for judgment of acquittal, the defendant must have properly preserved the issue for appellate review. Here, the defendant moved for judgment of acquittal at the close of the state's case. Indeed, he was successful in having the counts of resisting arrest and disorderly conduct dismissed. But, after the defendant presented his own evidence, he failed to renew his motion. We consistently have held that the failure to *renew* a motion for judgment of acquittal at the close of evidence forecloses the defendant's right to appeal the denial. *See State v. Andreozzi*, 798 A.2d 372, 374 (R.I.2002) (citing *State v. Studley*, 671 A.2d 1230, 1231 (R.I.1996)).

### Conclusion

For the reasons set forth in this opinion, we affirm the judgments of conviction.

**4.** The defendant did not object to these jury instructions.

**5.** Our standard of review on appeal of the denial of a motion for judgment of acquittal is the same as applied by the trial justice: we "must view the evidence in the light most favorable to the state, without weighing the evidence or assessing the credibility of the witnesses, and draw therefrom every reasonable inference consistent with guilt." *State v. Mercado*, 635 A.2d 260, 263 (R.I.1993) (citing *State v. Johnson*, 116 R.I. 449, 454, 358 A.2d 370, 373 (R.I.1976)).

The papers in the consolidated cases are ordered to be returned to the Superior Court.