July 10, 2023

**Supreme Court**

No. 2020-288-C.A.
(N2/18-125A)

State                          :

v.                           :

Richard Gamache.              :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|  |  |
|---|---|
| State | : |
| v. | : |
| Richard Gamache. | : |

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.** The defendant, Richard Gamache, appeals from a judgment of conviction and commitment following a jury trial in Newport County Superior Court. On appeal, the defendant asserts that the trial justice erred in denying his motion for judgment of acquittal on the felony charges that stemmed from his alleged violations of G.L. 1956 § 11-52-3; his argument is based on the ground that the "uncontroverted [and] *relevant* evidence" proves that he had the authority to make the alterations and deletions in question.[1]

---

[1] General Laws 1956 § 11-52-3 provides:

> "Whoever, intentionally, without authorization, and for fraudulent or other illegal purposes, directly or indirectly, accesses, alters, damages, or destroys any computer, computer system, computer network, computer software, computer program, or data contained in a computer, computer system, computer program, or computer

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

## Facts and Travel

This case stems from defendant's alleged misuse of his position as detective commander in the Middletown Police Department for the purpose of assisting one Tiffany Walaski in attaining a Housing Choice Voucher from the Newport Housing Authority. The facts relative to defendant's actions and the eventual charges against him will be more fully explained *infra*, when we summarize the trial testimony of the various witnesses.

On April 20, 2018, defendant was charged by information with five counts of accessing a computer "for the purpose of damaging, destroying, altering, deleting or removing any computer program or data contained in it in connection with any scheme or artifice to defraud, in violation of § 11-52-2(3)" (Counts One through Five);[2] and twelve counts of "intentionally and without authorization directly or indirectly" accessing, altering, damaging, or destroying "any computer system, computer network, computer software, computer program or data contained in a

network shall be guilty of a felony and shall be subject to the penalties set forth in § 11-52-5."

[2] Prior to trial, the state dismissed Counts One through Five pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure.

computer system," in violation of § 11-52-3 (Counts Six through Seventeen);[3] and

two counts of knowingly giving "to an agent, servant, or employee of the State of

Rhode Island, a document * * * which contained a false, erroneous or defective

statement in an important particular," with the intent "to mislead the State of Rhode

Island," in violation of G.L. 1956 § 11-18-1 (Counts Eighteen and Nineteen). A

four-day jury trial was held in February of 2020. We relate below the salient aspects

of what transpired at the trial.

## A

## The Testimony of Detective Michael O'Neill

Michael O'Neill, a Rhode Island State Police detective, testified that, on

October 14, 2017,[4] he and Trooper Ted Gibbons were assigned to "DUI patrol" and

that, at approximately 12:30 a.m., a white Lexus "operating erratically" passed their

---

[3]     The referenced charges alleged that defendant altered the following: arrest report 08-247-AR on January 27, 2016 (Count Six); arrest report 08-120-AR on January 27, 2016 (Count Seven); arrest report 16-340-AR on May 4, 2016 (Count Eight); incident report 16-4-OF on August 11, 2016 (Count Nine); accident report 16-539-AC on September 20, 2016 (Count Ten); arrest report 11-913-AR on December 21, 2016 (Count Eleven); arrest report 07-1042-AR on December 21, 2016 (Count Twelve); arrest report 11-60-AR on December 21, 2016 (Count Thirteen); arrest report 11-271-AR on December 21, 2016 (Count Fourteen); incident report 15-687-OF on December 21, 2016 (Count Fifteen); investigative report 15-40-IV between December 2, 2015 and October 14, 2017 (Count Sixteen); and incident report 14-842-OF between May 9, 2014 and October 14, 2017 (Count Seventeen).

[4]     At that time, Detective O'Neill was a trooper.

marked cruiser "at a high rate of speed * * *." After successfully pursuing the speeding vehicle, they initiated a motor vehicle stop. Detective O'Neill stated that defendant, who was a passenger in the white Lexus, "repeatedly indicat[ed] that he was a police officer," had a "[s]trong odor of alcohol coming from his breath," and "appeared heavily intoxicated." He testified that the driver, Tiffany Walaski, "was also heavily intoxicated." Detective O'Neill further testified that Ms. Walaski "identified the defendant as her boyfriend."[5]

Detective O'Neill testified that it was then "determined that both would be charged with domestic [*sic*] and Ms. Walaski would also be charged with DUI."[6] He added that defendant and Ms. Walaski were both arrested at the scene and were transported to the Rhode Island State Police barracks in Scituate. Detective O'Neill testified that the Middletown Police Department was contacted and that Major Ferenc Karoly of that department came to the barracks that night. He added that defendant was arraigned and was then released from State Police custody.

---

[5] On the first day of trial, the trial justice instructed the jury that defendant had conceded that he and Ms. Walaski "were involved in a romantic relationship at all times relevant to this trial."

[6] These charges were subsequently dismissed.

**The Testimony of Chief Anthony M. Pesare**

Anthony M. Pesare, the former chief of police of the Middletown Police Department, testified that in 2016 defendant held the position of detective commander in that department. He stated that, after the October 14, 2017 incident, he ordered an internal investigation "into what had happened in the course of the arrest;" he added that defendant was notified that the Middletown Police Department was conducting such an investigation. He explained that the investigation "would focus solely on [defendant's] action in regards to department rules and regulations."[7]

Chief Pesare testified that, in January of 2018, he became aware that "the Rhode Island State Police charges that had been pending against the defendant had been dismissed." He added that the Middletown Police Department then "reengage[d] in the administrative investigation that had been formally opened * * * in October of 2017;" he explained that "it's common practice to let the criminal case play out completely before the administrative investigation takes place." Chief Pesare stated that he assigned Captain Jason Ryan to conduct the investigation.

Chief Pesare testified that he learned from Captain Ryan that "in the course of investigating whether or not the rules and regulations had been violated, he and his investigators had uncovered what appeared to be criminal behavior."

---

[7]     The referenced rules and regulations were admitted as a full exhibit at trial.

Specifically, he testified that Captain Ryan "uncovered evidence which appeared to indicate that [defendant] had used his position to petition the Newport Housing Authority to give favorable treatment to Ms. Walaski." It was his testimony that defendant sent two letters on the Middletown Police Department's letterhead to the Newport Housing Authority which falsely claimed that "Ms. Walaski was in dire danger because she was a criminal informant in a drug investigation."

Chief Pesare also testified that it was his responsibility "to manage or assign security rights" within the Middletown Police Department's IMC records system;[8] he added that he was assisted in that regard by his administrative assistant, Lisa Sisson. He further testified that, "[d]epending on an officer's position in the department, they are allowed access to certain documents and investigations and reports;" he added that "the higher you go in the police department, the more access you're given." Chief Pesare further stated:

> "[A detective commander] has administrative rights, which means he has high access to the reports, he has access to the system, he has, under the responsibilities of the detective commander, the ability to go into any investigation and document things or remove things. He has the authority to do that."

---

[8]     Chief Pesare explained that "[t]he IMC system is a way of recording all the reports, all the incident reports, accident reports, and so investigators can use that as a tool, a police officer can use it as a tool to upload data, register arrest reports, speeding tickets, any interaction with the public."

# C

## The Testimony of Tammy Nelson

Tammy Nelson, formerly director of housing at the Newport Housing Authority, testified that, in June of 2016, defendant approached her seeking an emergency housing voucher for Ms. Walaski on the ground that she "needed to move immediately" because she was an informant for the Middletown Police Department and "was in grave danger * * *." Ms. Nelson further testified that the Housing Choice Voucher (sometimes called a Section 8 voucher) is "referred to as the golden ticket * * *." She stated that, at that time, the waiting list for Housing Choice Vouchers had been closed for approximately eight years and there were thousands of people on the waiting list. Ms. Nelson further stated: "Unless there was an extenuating circumstance, displacement by government action, or if there was an emergency situation that necessitated an emergency voucher, other than that you basically were waiting on a waiting list, if you could even get on the waiting list * * *."

Ms. Nelson testified that, on June 9, 2016, after she had asked that defendant submit his request in writing, he sent her a letter, requesting an emergency housing voucher for Ms. Walaski. Ms. Nelson further testified that, on July 13, 2016, the request was denied because of Ms. Walaski's criminal background, which decision Ms. Walaski appealed. Ms. Nelson added that, on August 22, 2016, defendant sent

an additional letter explaining Ms. Walaski's continued need for a Housing Choice Voucher.[9] Ms. Nelson testified that, on November 9, 2016, the denial of the voucher request for Ms. Walaski was overturned; and she indicated that, on January 18, 2017, Ms. Walaski was issued a Housing Choice Voucher.

## D

### The Testimony of Detective Adam Tobias

Adam Tobias, a detective with the Middletown Police Department, testified that, on January 26, 2018, he met with Rhonda Mitchell of the Newport Housing Authority to discuss Ms. Walaski—specifically her housing status and how she had obtained such housing. He further testified that, on January 29, 2018, he met with Ms. Nelson, during which meeting Ms. Nelson explained that "defendant had come to her and requested a Section 8 housing voucher for Ms. Walaski based on an active case going on with the Middletown Police which put Ms. Walaski in imminent danger." The detective further testified that Ms. Nelson "talked about details of the case that had been described to her by the defendant and also [talked about] two letters that the defendant had provided to Newport Housing Authority regarding that."

---

[9] The letters of June 9 and August 22, 2016 were admitted as full exhibits at trial.

Detective Tobias also testified that Detective Scott Naso "recalled that the details of the letters and the situation that the defendant had described Ms. Walaski being part of was an actual investigation that Detective Naso had been involved with, however, Ms. Walaski was not involved in that investigation." He further testified that Det. Naso stated that "Ms. Walaski had been added to that investigative report."

Detective Tobias testified that an investigative incident report involving Ms. Walaski was missing from her "in-house record," which he explained is a "document that shows someone's overall contact with the Middletown Police." Specifically, he stated that "[t]here was an incident report, an OF report that involved the larceny of a cell phone from a bar named Brewski's in Middletown." He added that the reporting party was one David Latney and that, when he reviewed Mr. Latney's in-house record, he could no longer "find the report involving him reporting that his cell phone had been stolen." He stated that he then utilized the "detective case assignment Excel spreadsheet that is maintained by the detective commander," which he stated was not "stored in or connected to the IMC record system" in order to track down the OF report number. He testified that the detective case assignment Excel spreadsheet, of which an excerpt was admitted as a full exhibit at trial, listed the OF report number as 15-687-OF. He further testified that, when he searched for this OF number in the IMC records system, "[t]he report came back not on file."

Detective Tobias testified that, on January 30, 2018, he and Captain Ryan met with Nate McClymonds, the Town of Middletown's Information Technology Support Specialist, to inquire as to whether "there was a way to obtain reports that had been deleted from the IMC system [and whether] there was a way to determine what reports from the IMC system had been deleted, who they were deleted by and when they were deleted." He added that, in the course of the January 30, 2018 meeting, they contacted TriTech Corporation, which he described as "a software company that provides support for the IMC system;" he said that they contacted that company in order to "retrieve a complete list of deleted files from the IMC records system."

Detective Tobias testified that the next day, January 31, 2018, Captain Ryan generated a list of deleted files, which list was admitted as a full exhibit at trial. It was his testimony that, on December 21, 2016, the IMC system had recorded five separate deletions within the incident report concerning the fact that he had "investigated Ms. Walaski for the larceny of the cell phone from Brewski's" (No. 15-687-OF). He stated that the network user ID and the IMC user ID associated with those five deletions were defendant's.[10]

---

[10] Detective Tobias confirmed that the network user identification is what allows an employee "initial access into the broader Middletown Police computer system," but that "one has to enter one's personal password alongside one's IMC user ID in order to first log into the IMC system * * *."

Detective Tobias further testified that, as a detective, he could change mistakes made in reports and that he also had the "access and ability to" delete information "that really didn't belong there * * *." He added that he had the access and "the authority for a legitimate reason * * *." Detective Tobias testified that the right of access of defendant, as the detective commander, "would be a little bit higher" than his. He stated that defendant had the right to modify reports as well as "the right to delete certain information in the reports * * *."

### E

### The Testimony of Detective Scott Naso

Scott Naso, a detective in the Middletown Police Department, testified that, in January of 2018, Captain Ryan asked him to assist in an internal investigation regarding defendant. He further testified that, on January 26, 2018, Captain Ryan asked him if Ms. Walaski was an informant for the department. He stated that, on that same day, he checked Ms. Walaski's name in the department's IMC investigative module and discovered that Ms. Walaski's name had been inserted into an investigation that he had conducted during the 2015-2016 calendar year (No. 15-40-IV). Detective Naso testified, however, that Ms. Walaski was not the confidential informant who was used in that investigation, nor was she ever an informant for the Middletown Police Department.

Detective Naso further testified that, on January 28, 2018, he used the IMC records system to generate an up-to-date copy of Ms. Walaski's 2018 in-house record, which he compared to a copy of Ms. Walaski's in-house record that he had printed on January 4, 2015. He stated that the 2018 in-house record had "four arrest reports that had been deleted from it;" he added that "there were several reports under the other activity section of the in-house record that had been removed."

It was Det. Naso's further testimony that arrest reports 11-913-AR, 08-247-AR, 08-120-AR, and 07-1042-AR had all been deleted from Ms. Walaski's 2018 in-house record and that incident report 14-842-OF "had been altered" and "was missing all of the information in the actual report." Detective Naso also testified that he then searched Ms. Walaski's name on the Rhode Island Judiciary public portal and learned that "all of those arrests listed were listed in the public portal's website." He further testified, however, that the arrest reports had been "completely removed from digital existence" within the IMC records system. In addition, Det. Naso testified that, on August 16, 2019, he conducted a search of defendant's locker at the Middletown Police Department, during which he found "an altered copy of [his] investigative report 15-40-IV contained in the back of the defendant's locker behind his duty bag."

## F

### The Testimony of Officer David Guerriero

Officer David Guerriero of the Middletown Police Department testified that, on June 21, 2018, he met with Captain Ryan and Det. Tobias concerning an incident report that he had authored and which is identified as "report 14-842-OF." The report that he submitted concerned some information relative to Ms. Walaski which he had garnered from a person to whom he had given a ride from Newport to that person's place of employment in Middletown. Officer Guerriero testified that Ms. Walaski's name was missing from the report as was his "narrative setting forth [his] observations" relative to what had been disclosed to him about Ms. Walaski.

## G

### The Testimony of Lisa Marie Sisson

Lisa Marie Sisson, the administrative assistant to the chief of police in Middletown, testified that the chief "has the authority and decides who gets what access based on their rank." She added that she does "the actual entry into the system to give them the rights." Ms. Sisson explained that there are not "individual assignments of security rights to individual members of the Middletown Police Department," but rather "it all depends on their rank and their job responsibilities." She testified that defendant had "the ability to alter or delete electronic records within the IMC system * * *." She further testified that defendant also had "the

security right to actually alter or delete a file within the system, that grant of authority * * *."

Ms. Sisson testified that she did not know whether there were restrictions on defendant "making entries * * * and deletions in the IMC system * * *." She added that the restrictions "would be part of the rules and regulations of the police department." Ms. Sisson acknowledged that defendant "had the right and permission to use the computer system, the IMC system" and that he could use the computer system "to add and delete information * * *."

**H**

**The Testimony of Captain Jason Ryan**

Captain Jason Ryan, who was responsible for the administrative services in the detective division of the Middletown Police Department, testified that, on October 16, 2017, two days after defendant's October 14 arrest by the State Police in the white Lexus incident, Chief Pesare ordered him to "open up an internal investigation into the happenings surrounding the arrest * * *." He further testified that, in January of 2018, after the charge against defendant relative to the white Lexus incident had been disposed of, he began his internal investigation. He stated that it was through Det. Naso that he "first became aware of alterations and deletions to reports within the IMC system;" he said that Det. Naso had "found that the investigative report [15-40-IV] that he had done in 2015 had been altered * * *."

Captain Ryan also referred to "Detective Tobias discovering that his report [15-687-OF] that he had done had been deleted."

Captain Ryan testified that, on January 31, 2018, he and Det. Tobias "ran an audit on the incidents and arrests * * * looking for which files had been deleted." He testified that the said audit generated a four-page report,[11] which listed deletions relative to arrest reports, incident reports, and accident reports. Captain Ryan testified that all of the deletions in question were made under the aegis of defendant's user ID applicable to the IMC records system.

The following are examples of the numerous deletions from the official reports that the audit report disclosed:[12]

- January 27, 2016: deletions were made in arrest reports identified as 08-247-AR and 08-120-AR.

- May 4, 2016: two deletions were made in arrest report identified as 16-340-AR.

- December 21, 2016: deletions were made in arrest report identified as 11-913-AR.

Finally, Captain Ryan testified that the audit reflected a deletion made to accident report 16-539-AC on September 20, 2016. He further testified that, although the report itself had been erased from the IMC records system, he was able

---

[11] The referenced audit report was admitted as a full exhibit at trial.

[12] Virtually all of the official reports alluded to in the text related to Ms. Walaski.

to use the dispatch log to determine the details of the accident in question. It was his testimony that the dispatch log, which was admitted as a full exhibit, listed one Adam Gamache[13] as the operator of the vehicle involved in the accident and defendant as the owner of the vehicle.

**1. The Objection to the Testimony about the Rules and Regulations**

During Captain Ryan's direct testimony, the prosecutor requested a sidebar conference, during which he explained that he was "about to make an inquiry * * * into some of the Middletown Department rules and regulations that are already in as a full exhibit through Chief Pesare * * *." The prosecutor added that he had requested the sidebar in the wake of a chambers conference that had taken place earlier that day, at which the trial justice instructed him to approach the bench before inquiring about the Middletown Police Department's rules and regulations. During the sidebar conference, the trial justice noted that "there's an issue" because "there is authority on both sides," which he explained he had come to realize "after hearing about it for the first time" that day.

The trial justice proceeded to ask defense counsel: "What do you have to say about that?" Defense counsel answered as follows:

> "The defendant is charged with 12 counts of 11-52-3, which in essence reads whoever intentionally and without authorization, directly or indirectly, etcetera. The

---

[13] Captain Ryan testified that it was his belief that "Adam Gamache is one of the defendant's sons."

> defendant's position is that this is an anti-hacking statute. That is to say that the purpose of this statute is to punish a person who either hacks into the IMC from the outside world or, by way of example, a patrolman who only can initially enter some information as far as his narrative is concerned, exceeds his authority, hacks into the computer and makes changes. If the person, at least in the defendant's position, has the authority to enter additional information or delete information, he is not a hacker. * * * So as far as the defendant is concerned, the legislature never intended that this statute be used for a breach of some kind of employment condition that the defendant was under, but merely he was either a hacker or he wasn't, and I think the evidence is clear he was not."

The prosecutor responded that the state had "proceeded under 11-52-3 under the premise that Detective Commander Gamache acted without authority based on the definition in that statute, the part of the 'without authority' definition, which states use of a computer in a manner exceeding his right or permission * * *." He added that "in terms of what the legislature was trying to do interpreting that, it's broad language and it's common sense." The prosecutor continued, stating: "If someone has the authority, like Mr. Gamache did, to alter and delete, that authority doesn't include wiping out police computer records. Using a computer in a manner exceeding his rights speaks directly to that."

The prosecutor emphasized that his position was "that this evidence of violations of policy and their training on the proper uses is properly admitted to show that he used a computer in a manner exceeding his right or authority." Defense counsel responded by stating that "[i]f the [c]ourt is to follow that theory, then

defendants would be subject to this particular statute, 11-52-3, for lack of authority for any alleged violation of a particular policy" and the state could "pick and choose as to who they want to charge with a violation of the rules and procedure when, in fact, the person with authority makes some type of deletion."

The trial justice reserved decision, and the prosecutor continued with his direct examination of Captain Ryan. After a recess, the trial resumed and the following exchange occurred outside the presence of the jury:

> "THE COURT: The State has intended to examine Captain Ryan regarding the application of the rules and regulations the Middletown Police Department entered as Exhibit 3 as it relates to whether or not the defendant had authorization to do what he is alleged to have done regarding manipulation of data on the computer system of the police department. The defendant has raised the issue that the rules and regulations do not apply and are not evidence that he utilized the computer for an illegal or improper purpose. Did I sufficiently state that?
>
> "[DEFENSE COUNSEL]: Without authority, your Honor.
>
> "THE COURT: Without authority. It's the authorization is the issue which is contested at this point and the application of the rules and regulations to the authority is the issue that's been presented. The [c]ourt is bound to read the statute based on the plain language of the statute * * *. [T]he definition section * * * says a person is without authority when, A, he or she has no right or permission of the owner to use the computer, and that's not the case here. The defendant definitely had the permission to use the computer, but it says 'or', he or she uses a computer in a manner exceeding his or her right or permission. The plain language of that statute indicates that a person can lawfully be using a computer, however,

- 18 -

if he exceeds that authority, then he violates the terms and conditions of the statute. I think that's clear, unambiguous language associated with the criminal statute that the defendant is being charged with. I also think that the rules and regulations of the police department relate directly to his authorization. To say that the defendant's got carte blanche authorization to manipulate the data in the computer without any reference to what the rules and regulations say is allowed and what is not permitted would be -- it just doesn't make sense to the [c]ourt. I think that the rules and regulations as to his authority are directly related to his authority, and so I'm going to allow the subject matter to be addressed by the State, of course, subject to any other objections that may be posed; but the basic premise is that the [c]ourt believes that the rules and regulations are directly related to his authority to do what he did when he was using the computer, and the statute says that."

At the conclusion of the trial justice's ruling, defense counsel stated that he "objects to the [c]ourt's decision as far as allowing the rules and regulations to constitute whether he did or did not have authority." The trial justice stated: "That was the whole purpose of the sidebar, so it's preserved." The trial justice also confirmed that defendant "will have an ongoing objection based on that." At that point, the prosecutor continued with his direct examination of Captain Ryan.

## 2. The Additional Testimony of Captain Ryan

Captain Ryan testified that the job description of a Middletown Police Department detective, which was admitted as a full exhibit, includes "[p]revent[ing] the destruction or removal of any records, fingerprint cards or photographs from files

- 19 -

except upon the order of the chief of police."[14]  Captain Ryan further testified that he is familiar with the Middletown Police Department's rules and regulations.  It was his testimony that the rules and regulations state under the "Prohibited Conduct" subsection that "[a]n officer or employee shall not make or submit any false or inaccurate reports or knowingly or cause to be entered into any departmental books, records or reports, any inaccurate, false or improper information."  He further testified that the rules and regulations state that "all members and employees who are issued this manual are responsible for its maintenance and knowledge of its contents * * *."

Captain Ryan also testified that, after employees receive the rules and regulations, they are required to sign a statement to the effect that they have read them; and he further testified that they "can be charged with a violation of those rules within the Middletown Police Department."  He further explained that at "the Rhode Island Municipal Police Academy, we take a class on report writing," during which "it's emphasized that the reports are written unbiasedly, truthfully and accurately and they are going to be memorialized as to the true events that took place during that time."

---

[14]  The defendant objected on relevancy grounds to the job description being admitted.

# I

## The Defendant's Motion for Judgment of Acquittal

At the conclusion of Captain Ryan's testimony, the prosecution rested. Thereafter, defense counsel moved, pursuant to Rule 29 of the Superior Court Rules of Criminal Procedure,[15] for the entry of a judgment of acquittal. Defense counsel explained that he "is aware that the [c]ourt allowed certain evidence to be introduced concerning the rules and regulations" and that he "is also aware that the [c]ourt is going to instruct the jury that they may consider violations of the rules and regulations as an act without authority of the defendant while he's on the IMC computer system." He further stated:

> "In order for the defendant to preserve his objection to the evidence, he must indicate that his position is that the allowance of rules and regulations to suggest a violation of his authority with regard to the IMC computer system is objectionable. I understand the [c]ourt allowed it, but I think, in order to preserve the record for consistency, if for

---

[15]     Rule 29 of the Superior Court Rules of Criminal Procedure reads in pertinent part as follows:

> "The court on motion for a judgment of acquittal of a defendant or on the court's own motion shall order the entry of judgment of acquittal of one (1) or more offenses charged in the indictment, information, or complaint, after the evidence on either side is closed, if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the State is not granted, the defendant may offer evidence without having reserved the right."

some reason the [c]ourt were in error, then the defendant, based on the evidence but for the rules and regulations, I believe his motion for judgment of acquittal should be granted. And I raise it for that particular purpose. I realize, in a light most favorable to the State with what came in, he's dead in the water, but I wanted to preserve his particular right by suggesting that the defendant still objects to the [c]ourt's ruling about the rules and regulations and had the objection been sustained, probably 12 counts would have been dismissed, but I realize what the [c]ourt's obligation is, but I needed to put that on the record."

Thereafter, the following exchange occurred:

"THE COURT: Okay. Other than that, is there any other basis for the --

"[DEFENSE COUNSEL]: No.

"THE COURT: -- Rule 29 motion?

"[DEFENSE COUNSEL]: No. And with regard to the false reports, that's a given all day everyday. That's not the subject matter of a Rule 29.

"THE COURT: Okay. So your Rule 29 motion is, in fact, if the [c]ourt were to have erred on its decision to allow the rules and regulations to become evidence of his authority, then, in fact, the Rule 29 motion excluding that evidence should be granted.

"[DEFENSE COUNSEL]: That's the argument."

After a recess, the trial justice made the following statement outside the presence of the jury:

"Defendant made a motion pursuant to Rule 29 based on a perceived error by the [c]ourt in that the [c]ourt allowed

- 22 -

the Middletown Police Department policies and procedures to be introduced into evidence as it relates to defendant's lack of authority to do the alleged acts, that was the only basis by which the motion was based, and the [c]ourt denies the motion on that basis as it believes the [c]ourt's decision was the right one and it declines to address the issue in the hypothetical."

After having so ruled, the trial justice stated that the testimony of Captain Ryan "established that destruction of or modification of records is against Middletown Police Department policies and procedures, and, thus, outside the defendant's authority."

Thereafter, defendant rested and then renewed his motion for judgment of acquittal, which the trial justice again denied. After both parties presented their closing arguments and the trial justice delivered the jury instructions, the jury retired to deliberate. At the conclusion of its deliberations, the jury found defendant not guilty as to one count of violating § 11-52-3,[16] and guilty on the remaining thirteen counts. On February 27, 2020, defendant filed a motion for a new trial, which was

---

[16] The jury found defendant not guilty as to Count Ten, which alleged that on September 20, 2016, defendant altered accident report 16-539-AC. (That accident report concerned an accident in which defendant's son had been involved.)

denied on June 17, 2020.[17] On July 15, 2020, defendant was sentenced.[18] He thereafter filed a timely notice of appeal to this Court.

## II

### Issue on Appeal

On appeal, defendant asserts that the trial justice erred in denying his motion for judgment of acquittal on the basis of his contention that "[a]ny rules governing the user's behavior within the system are irrelevant and cannot contribute to the sufficiency of the state's case in a Rule 29 motion * * *."

## III

### Standard of Review

Rule 29 "provides that the trial justice shall order the entry of judgment of acquittal when the evidence is insufficient to sustain a conviction of one or more of the offenses charged." *State v. Maria*, 132 A.3d 694, 698 (R.I. 2016) (internal quotation marks omitted); *see also State v. Gibson*, 291 A.3d 525, 540 (R.I. 2023). Moreover, "[i]n reviewing the denial of a motion for a judgment of acquittal, a

---

[17] The denial of the motion for a new trial is not challenged in the briefs submitted to this Court.

[18] The defendant was sentenced to five years, with eighteen months to serve, with probation for each of the eleven violations of § 11-52-3, with the sentences to be served concurrently. He was also fined $200 for each of the violations. Additionally, the trial justice sentenced defendant to one year, nine months to serve, with probation for the two violations of § 11-18-1, to be served consecutively with each other, but concurrently with the other violations.

defendant must overcome a decidedly high bar in that we apply the same standard as that applied by the trial justice; namely, we must view the evidence in the light most favorable to the state, * * * giving full credibility to the state's witnesses, and drawing therefrom all reasonable inferences consistent with guilt." *State v. Benoit*, 138 A.3d 805, 810 (R.I. 2016) (internal quotation marks and brackets omitted). Significantly, "[t]he court is required to evaluate only that evidence that the prosecution claims is capable of supporting proof of guilt beyond a reasonable doubt." *State v. Ros*, 973 A.2d 1148, 1159 (R.I. 2009). Accordingly, "[t]he trial justice's denial of the motion should be upheld when the totality of the evidence so viewed and the inferences so drawn would justify a reasonable juror in finding a defendant guilty beyond a reasonable doubt * * *." *Maria*, 132 A.3d at 698 (internal quotation marks omitted).

## IV

## Analysis

The defendant argues that "§ 11-52-3 only criminalizes a user who accesses a certain computer system (or an area of the system) without permission, not a person who behaves inappropriately once they are logged into a system they have permission to enter." He further contends that: "Had the trial justice properly considered the uncontroverted, *relevant* evidence before him, he would have granted the motion for a judgment of acquittal."

For its part, the state contends that defendant is barred by our raise or waive rule from pressing this argument on appeal because it "is not the same argument that was made by the defendant to the Superior Court * * *." In addition, the state contends that "the court applied the correct legal standard and correctly observed that a motion for judgment of acquittal functions to assess the *sufficiency* of the evidence presented, and is an inappropriate procedural vehicle to challenge the *admissibility* of evidence." Finally, the state contends that, even if this Court determines that defendant's argument is not waived, Captain Ryan's testimony as well as other evidence presented "showed that, although the defendant had the security clearance to access data in the IMC system, he did not have the right or permission to alter or delete accurate information or to falsify correct police reports for any reason," especially "not for the fraudulent purpose of securing a Section 8 emergency housing voucher for [Ms.] Walaski * * *."

At the outset, we first address the state's contention that defendant waived his argument on appeal.

To begin, we emphasize that this Court's "raise-or-waive rule precludes us from considering at the appellate level issues not properly presented before the trial court." *State v. Merida*, 960 A.2d 228, 236 (R.I. 2008) (internal quotation marks omitted). And it is important to emphasize that "the raise or waive rule is not some sort of artificial or arbitrary Kafkaesque hurdle," but rather it is "an important

guarantor of fairness and efficiency in the judicial process." *DeMarco v. Travelers Insurance Company*, 26 A.3d 585, 628 n.55 (R.I. 2011); *see also State v. Figuereo*, 31 A.3d 1283, 1289 n.6 (R.I. 2011). Accordingly, we "will not review issues that were not presented to the trial court in such a posture as to alert the trial justice to the question being raised." *Figuereo*, 31 A.3d at 1289 (internal quotation marks omitted). Likewise, "a litigant cannot raise an objection or advance a new theory on appeal if it was not raised before the trial court." *State v. Bido*, 941 A.2d 822, 829 (R.I. 2008).

On appeal, defendant challenges the trial justice's denial of his Rule 29 motion for judgment of acquittal on the ground that the evidence was insufficient to support a conviction under § 11-52-3 because, in his view, the statute does not criminalize the conduct of "a person who behaves inappropriately once they are logged into a system they have permission to enter." However, this is not the same argument as defendant made below.

In arguing before the trial justice for the entry of a judgment of acquittal pursuant to Rule 29, defendant stated that he "is aware that the [c]ourt allowed certain evidence to be introduced concerning the rules and regulations." Further, in the course of articulating his Rule 29 motion, he stated:

> "In order for the defendant to preserve his *objection to the evidence*, he must indicate that his position is that the allowance of rules and regulations to suggest a violation of his authority with regard to the IMC computer system

- 27 -

is objectionable. I understand the [c]ourt allowed it, but I think, in order to preserve the record for consistency, if for some reason the [c]ourt were in error, then the defendant, based on the evidence but for the rules and regulations, I believe his motion for judgment of acquittal should be granted." (Emphasis added.)

Importantly, prior to ruling on defendant's Rule 29 motion, the trial justice explicitly asked defense counsel: "So your Rule 29 motion is [that] if the [c]ourt were to have erred on its decision *to allow the rules and regulations* to become evidence of his authority, then, in fact, the Rule 29 motion excluding *that evidence* should be granted[?]" (Emphasis added.) Notably, defendant confirmed: "That's the argument."

Thereafter, the trial justice stated:

"Defendant made a motion pursuant to Rule 29 based on a perceived error by the [c]ourt *in that the [c]ourt allowed the Middletown Police Department policies and procedures to be introduced into evidence as it relates to defendant's lack of authority to do the alleged acts*, that was the *only* basis by which the motion was based, and the [c]ourt denies the motion on that basis as it believes the [c]ourt's decision was the right one and it declines to address the issue in the hypothetical." (Emphasis added.)

The defendant's argument on appeal is much more expansive than, and quite different from, the argument he made before the trial justice. In his argument made in Superior Court, he tailored his argument in support of his Rule 29 motion to focus exclusively on the trial justice's alleged error in allowing Captain Ryan to testify as to the Middletown Police Department's rules and regulations. By contrast, on

- 28 -

appeal, he fashions his argument in terms of statutory analysis and asserts that "[h]ad the trial justice properly considered the uncontroverted, *relevant* evidence before him, he would have granted the motion for judgment of acquittal."

It is important to note that the trial justice was not alerted to, nor did he address, defendant's argument as it has been articulated before us on appeal— namely, that the *entirety* of the evidence presented was insufficient to establish that defendant deleted and altered the IMC reports "without authorization * * *." *See State v. Grant*, 840 A.2d 541, 546-47 (R.I. 2004) ("[A]ssignments of error must be alleged with sufficient particularity so it will call the trial justice's attention to the basis of the [argument]."). As such, defendant's argument at the Rule 29 juncture in the trial court was far too narrow in focus to permit us to rule that it was essentially the same argument as he is now presenting to this Court.

Accordingly, we deem the defendant's argument on appeal to be waived. For that reason, we need not and shall not undertake an analysis in this case of the defendant's appellate Rule 29 argument.

## V

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record may be returned to that tribunal.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Richard Gamache. |
| **Case Number** | No. 2020-288-C.A. (N2/18-125A) |
| **Date Opinion Filed** | July 10, 2023 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Newport County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian Van Couyghen |
| **Attorney(s) on Appeal** | For State:<br><br>Mariana Ormonde<br>Department of Attorney General<br>For Defendant:<br><br>Angela M. Yingling<br>Office of the Public Defender |